WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—January, 1886.

## COLLYER *v.* COLLYER.

*In the matter of the application for probate of a will of* ELIZABETH COLLYER, *deceased.*

*It seems,* that declarations of a decedent, as to the existence of a will, are competent, while those relating to its destruction by him are inadmissible, as evidence of the *factum*, in a special proceeding for probate.

But a declaration, made by a decedent, seven months before his death, to the effect that he had made a will of a certain character, does not rebut the presumption of its destruction, *animo revocandi*, arising from the fact that none could be found, after diligent search made soon after the death.

The *factum* of a lost or destroyed will must be established in the same manner as if the will itself were produced in court, for probate ; *i. e.,* two, at least, of the subscribing witnesses, must be produced, or the non-production of one or both be satisfactorily accounted for, whereupon the fact that he or they attested the will must be proved by competent testimony.

Colligan v. McKernan, 2 *Dem.*, 421—distinguished.

Under Code Civ. Pro., § 1865, requiring that the provisions of a lost or destroyed will must be "clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness," one who produces and merely verifies an alleged draft of the will cannot be considered the needed additional witness, within the design of the rule; nor are declarations of the decedent, as to the contents and substance of the will, available as an equivalent thereto.

Upon an application for the probate of a will alleged to have been lost or destroyed, the only witness examined as to the *factum* was the lawyer

who drew it, and who produced a draft containing neither the decedent's name, nor the names of the subscribing witnesses. He thought, . though he was unable positively to swear, that he was a subscribing witness, but was unable to state who, besides himself, acted as such; thus rendering it impossible either to call the other witness, or, by accounting for his absence, to lay a foundation for proof of the fact that he signed in attestation.—

*Held,* that, on this ground, alone, probate should be refused.

An unsuccessful *proponent* of a will is not entitled to costs, as of right, under Code Civ. Pro., § 2558, subd. 3, which withdraws the allowance thereof, in certain cases, from the Surrogate's discretion,—that subdivision being, by its terms, confined exclusively to contestants.

Different contestants of a will have a right to employ separate counsel, to protect their several interests; and where they pursue such a course, it is in the Surrogate's discretion to award them separate bills of costs, which may, in a proper case, be charged personally against the proponent.

The history of the bestowal, and mode of exercise, of the power to take proof of lost wills of real and personal property—narrated.

ELIZABETH COLLYER died in March, 1883, leaving, as alleged, about $70,000 of personal estate. After a fruitless search for a will of the decedent and on April 13th, of the same year, letters of administration on her estate were duly granted to her brother, Charles S. Collyer. On August 10th, 1885, the latter filed a petition for a judicial settlement of his account, to which George B. Collyer alleged, *inter alia,* as an objection, that the decedent left a last will and testament; and he subsequently filed a petition praying leave to prove the same as a lost or destroyed will. Thereupon, the proceedings on the accounting were suspended, until the result of such application should be determined. The evidence disclosed the facts that decedent, in 1863, executed a will, which was prepared by John E. Parsons, a counsellor at law, in the city of New York, the draft of which he produced and verified; that the engrossed copy, after

execution, remained in his custody for several years, and was delivered to decedent about the year 1877, in which year a folded paper was seen in her possession which she said was her will ; that thereafter it was never seen by any one.  By the draft which was produced, it appeared that she intended to give all her property, real and personal, to her brother, George B. Collyer, with whom she had lived for many years.  There were declarations of decedent proved, subject to objection, to the effect that she had made such a will, and also declarations, subject to objection, that she had destroyed the same.  She was a maiden lady, and left, her surviving, several brothers and sisters, besides said George B. Collyer, and others, who were her next of kin.  Only one witness to the execution of the will was examined, and if there were any other subscribing witnesses, their names were not given, nor were they produced, nor their absence accounted for.

D. McMahon, *and* F. Larkin, *for proponent.*

Seaman Miller, *for administrator.*

Abram B. Havens, Edward Wells, *and* Henry M. Collyer, *for various next of kin.*

The Surrogate.—This proceeding was instituted with a view to proving the last will and testament of Elizabeth Collyer, deceased, as a lost or destroyed will.  The power to take such proof, relating to a will of real estate, formerly resided solely with the Court of Chancery (Bowen v. Idley, 11 *Wend.,* 227 ; 6 *Paige,* 46).  The proceeding was based upon the fact that jurisdiction was lacking in the proper eccle-

siastical courts and courts of law (1 Story Jur., § 440). In such a case, the court usually awarded an issue of *devisavit vel non* (Bowen v. Idley, *supra*), and required that, on the trial of such issue, all the witnesses to such will should be examined, if practicable, unless the heir should waive the proof (2 Story Eq. Jur., § 1447, and cases cited). So, under a bill to perpetuate testimony, the will could be proved in the Court of Chancery, by the examination of the witnesses, without proceeding to a decree (id., § 1506). In no case did equity interfere to mitigate the severity, when any existed, of the rules of positive law (3 Bl. Com., 55). But by 2 R. S., 67, § 63, the Court of Chancery of this State was clothed with power to take proof of the execution of any will of real *or personal* estate, which was lost or destroyed, and *to establish the same*, as in case of lost deeds. By the next section, the decree establishing the will was directed to be recorded by the Surrogate, and the proper letters to be issued by him, as if the will had been proved before him. By § 67, no will could be allowed to be proved as a lost or destroyed will, unless proved to have been in existence at the time of the death of the testator; or shown to have been fraudulently destroyed in his lifetime; nor unless its provisions should be clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being deemed equivalent to one witness. The R. S. (§ 40) required that at least two witnesses should subscribe a will of real and personal estate, or both, at the request of the testator; but, while § 12 required all the witnesses to a will of real estate, living in the

State and of sound mind, to be examined, by § 26 a will of personal estate could be proven by *one* or more of such witnesses. These provisions are all contained in the same title of the R. S., which conferred the power upon the Court of Chancery to take the proof of such wills lost or destroyed.

These being positive rules of law regulating the mode and sufficiency of the proof of wills in Surrogates' courts, and none other being prescribed for the Court of Chancery, the latter was bound, by them, as far as practicable, in the cases where jurisdiction was thus conferred upon it. By the act of 1837 (ch. 260, § 10), two at least of the witnesses to a will of real *or personal* estate, if so many were living in the State and of sound mind, were required to be produced and examined; and the death, absence, or insanity of any of them was required to be satisfactorily shown. By a subsequent provision, if *all* the witnesses were dead, out of the State, etc., proof might be taken of their handwriting, and of that of the testator. Now, by § 2618 of the Code, at least two of the witnesses, in all cases, must be produced and examined before the Surrogate, if so many are within the State and competent and able to testify; by the next section, the absence, death, etc., must be shown by competent proof, before dispensing with his or their testimony; and, by § 2620, provision is made for the proving of the handwriting of *any or all* who may be dead, absent from the State, etc.

The jurisdiction conferred by the R. S. upon the Court of Chancery to prove a lost or destroyed will was, when that court was abolished, devolved upon

the Supreme court, whose powers on the subject have been somewhat modified by §§ 1861, 1862 and 1863 of the Code. Section 2621 confers upon Surrogates' courts concurrent power, in regard to admitting such wills to probate. It will be seen, by reference to § 1863, when the action is brought in the Supreme court, that "where the parties to the action, who have appeared or have been duly summoned, include all the persons who would be necessary parties to a special proceeding, in a Surrogate's court, for the probate of the same will, and the grant of letters thereupon, *if the circumstances were such that it could have been proved in a Surrogate's court,*" the final judgment must direct, etc.

This precise question, as to proving a will by one witness when the other is not accounted for, it would seem, has never before arisen in this State, and the object of the examination of the history of this power so conferred upon the Supreme court, is to show that the *factum* of a lost or destroyed will must be established in the same manner as if the will itself were produced in court for probate; that is to say, two, at least, of the subscribing witnesses must be produced, or the non-production of them or either of them must be satisfactorily accounted for, and then the handwriting, or the fact of their having signed the will as witnesses, must be duly proven by competent testimony. The correctness of this position is sufficiently shown by the following cases: Grant v. Grant, (1 *Sandf. Ch.*, 235); Stephens v. Brooks (*Clarke*, 130); Everitt v. Everitt (41 *Barb.*, 385); Voorhees v. Voorhees (39 *N. Y.*, 463); see, also, Foster's Appeal (87

*Penn. St.,* 67; 1 *Am. Prob. R.,* 435, and notes). In the course of the researches made on the subject, no case has been found, where, in a proceeding to prove a lost or destroyed will, it was held that any proof, which fell short of that required by the statute for the proving of a will before the Surrogate, would be sufficient to establish it. At least two of the subscribing witnesses must be examined, if living and in the State and capable of testifying; and in case of death, absence, or insanity, the fact must be established by proper evidence, and then the fact of their having so subscribed may be proven. If only one witness be examined, and the handwriting of the other be not shown, then, as the Surrogate has now power to take the proof of a lost or destroyed will, it leads to the conclusion that he might, if the proponent's position be correct, admit it to probate on the testimony of a single witness and without calling the other, or accounting for his absence and proving that he signed as a witness, in defiance of the statutory regulations for proving one which is present. The case of Colligan v. McKernan (2 *Dem.,* 421), cited by proponent's counsel as an authority to show that a will may be proved by one witness, etc., is not in point. There the object of the proof was to defeat a will presented for probate by showing that it had been revoked by a subsequent will which was lost. The proceeding was not instituted to prove the lost will under the statute, and the learned Surrogate very properly held that one witness, at common law, was sufficient to sustain the objection to the will propounded. The Assistant V. C., in Grant v. Grant

(*supra*), says : " The will is said to be lost. But that does not affect the requisites to its due execution. Those must be proved as if it were present." So Justice BROWN, in the case of Everitt v. Everitt, says : " If there are witnesses to the execution of the instrument who have subscribed their names as such (and without subscribing witnesses, selected by the testator himself, a will has no force) they must also be produced and examined, if living and within the power of the court. If they be dead, or beyond the jurisdiction of the court, secondary evidence may be resorted to in this contingency, and proof taken of their handwriting."

I am thus led to the conclusion that the will in question has not been proven. John E. Parsons was the only witness examined as to the *factum* of the alleged will, which was drawn by him, the draft produced containing neither the name of the decedent nor those of the witnesses. While he cannot positively testify that he was a subscribing witness thereto, but thinks he was, yet, assuming that his impression is correct, he is unable to state who the other witness or witnesses were, and consequently, it was impossible to call them, or to show their absence or inability to testify, and thus lay a foundation for establishing the fact of their signatures by other proof. On this ground alone, probate should be refused.

But the proponent has wholly failed in his proof in other respects. He has not shown the will to have been in existence at the time of the death of the testatrix ; nor that it was fraudulently destroyed during

her lifetime.   It is true, he has offered much evidence with a view to establishing one or the other of those facts, but it falls far short of that conclusive character essential to either of those purposes.   The · declaration of the testatrix, to the effect that she had made a will of a certain character, uttered seven months before her decease, does not rebut the presumption of its destruction by her, *animo revocandi*, arising from the fact that none could be found, after diligent search made soon after her death (Betts v. Jackson, 6 *Wend.*, 173; Knapp v. Knapp, 10 *N. Y.*, 276; Schultz v. Schultz, 35 *id.*, 653; Eighmy v. People, 79 *id.*, 546).   Nor does the fact that an opportunity existed for the fraudulent destruction of the will, by those to whose interests it was inimical, overcome the presumption of such destruction by the deceased. There must be evidence furnished, strong enough in its character, to warrant the finding of the commission of such fraud by some one.   Here none is found to justify such a conclusion.   The contents of the will, after its execution in the manner shown, seem never to have been seen by any one, and the document was traced into the possession of the deceased in 1877, which was the last time, so far as appears, that the paper was ever seen.

In my view of the case, the declarations of the deceased as to the existence of the will, or of its destruction by her, and which were respectively objected to, are of little consequence, and no careful examination of the authorities cited has been made, although the better opinion would seem to be that the former are, in this case, admissible, while the

latter are not, and the objections thereto are disposed of accordingly. The matter turns upon considerations other than these.

There seems to be still another difficulty in the way of the establishing of this as a lost or destroyed will. Section 1865 of the Code requires that the provisions of the will shall be clearly and distinctly proven by at least two credible witnesses, a correct copy or draft being equivalent to one witness. This is the same as § 67 of the R. S. above quoted, and is made specially applicable to a proceeding of this character, in a Surrogate's court, by the same section which confers jurisdiction on it to prove such will. In this case, Mr. Parsons produced the draft of the will made by him, which, he substantially testifies, was correctly engrossed by his clerk, and, so engrossed, was executed by the decedent. Hence that draft° may be treated as a substitute for one of the two witnesses required by the statute. In no other way does he prove the provisions of the will. It is true, they were simple, devising and bequeathing all her estate, real and personal, to her brother George B. Collyer, the proponent, but that will not warrant the dispensing with the one witness which the statute requires beside the draft. If it did, then it would seem that, in all cases, the person verifying the draft or copy (and it would not be evidence without such verification,) by the very act of testifying to its correctness, would thereby become the needed witness. Such cannot fairly be considered the design of the provision. Another witness was required, to render the proof complete on this subject. Declarations of

the decedent as to the contents and substance of the will are not available for such a purpose. The evidence must come from some person who has read, or heard read, the document. None was produced, and the proof, therefore, falls short of what the statute requires.

Probate of the alleged will is accordingly refused, with costs to the contestants against the proponent

---

On the settlement of the decree in the above matter, counsel for proponent claimed, first, that the proponent was entitled to costs, as a matter of right, under subd. 3 of § 2558 of the Code, and that the court had no discretion on the subject; and second, that only one bill of costs could be allowed to all of the contestants, although they appeared separately, and by different attorneys.

THE SURROGATE.—As to the first point, I think that proponent's counsel is clearly in error. That subdivision applies only to a *contestant* of a will propounded for probate, and not to a *proponent*. Where a will is offered for probate, and a person, who is named as executor in a prior or subsequent one, contests the one so offered, and seeks to have it established, and thus defeat that which he contests, if he fail, acting in good faith, he shall be entitled to costs. That is by no means this case. Here George B. Collyer is the proponent, and not the contestant of any will. The object of this subdivision is stated in the Commissioners' note to be " to check the vastly in-

creasing number of cases, wherein wills are contested upon slight grounds, the contestants relying, if the estate is large, upon procuring an allowance for costs which will indemnify them against the expense of the litigation." The case of Whelpley v. Loder (1 *Dem.*, 368) furnishes an instance of the applicability of the subdivision to such a state of facts as is above supposed. Therefore, the proponent is not entitled to costs, as a matter of right.

In reference to the second point, it cannot be doubted that the different contestants had a perfect right to employ separate counsel to protect their several interests; and although they filed no written objections, yet the respective attorneys contested the matter throughout, and with much earnestness and zeal. The proponent commenced the proceeding solely in his own interest, possessed of no knowledge or evidence of facts to sustain it, trusting, apparently, to chance for their development, in which he failed. He cannot escape the consequence of such risk, by leaving the contestants to pay their own expenses in resisting his reckless attack upon their rights. The power of granting to or withholding costs from several defendants is, as is shown by the authorities cited by proponent's counsel, discretionary with the court (Hauselt v. Vilmar, 76 *N. Y.*, 630). This seems to be a case where it is eminently proper to charge the costs of each contestant upon the proponent, personally; and it is so ordered.