Everitt *v.* Everitt.

------------◆------------

EVERITT and others *vs.* EVERITT and HOYT, executors &c., and others.

Practice, and rules of evidence, upon a proceeding under the statute, to establish the execution and validity of a will alleged to be lost or destroyed; and what will be deemed sufficient proof of the execution, and the provisions, of the will.

The proof of a lost or destroyed will proceeds upon the theory that it is not in existence and cannot be produced before the surrogate. Hence the case is one of secondary evidence exclusively.

Proof will also be received to supply the imperfection of memory of the subscribing witnesses.

A proceeding under the statute, to prove a lost will, is not within the spirit or the letter of the 52d section of the statute of limitations applicable to suits in equity, requiring bills for relief, in case of the existence of a trust not cognizable by the courts of common law &c. to be filed within ten years after the cause of action shall accrue.

THIS was a proceeding in equity under the statute (2 *R. S.* 67) to take proof of the execution and validity of a lost or destroyed will, and to establish the same.

*T. McKissock, G. O. Hulse* and *Charles C. McQuoid,* for the plaintiffs.

*John G. Wilkin* and *E. A. Brewster,* for the defendants.

BROWN, J. The object of this action is to establish the execution and validity of the will of Walter C. Everitt, which is alleged to have been lost or destroyed. The deceased was a resident of Middletown, in the county of Orange, at the time of his death, which occurred on the 19th of January, 1842. The will is said to have been dated on the 11th of January of the same year, and witnessed by Henry S. Beaker and David Hoyt, both of the same place, and that Lewis H. Everitt and Harvey Everitt were the persons named as executors therein.

In proceeding to consider and apply the evidence to the allegations of the complaint, it is to be observed that the formalities or acts—several in number—which the law requires to constitute a valid will are to be proved in the usual way, as other facts are required to be proved to make them evidence in a court of justice. While the statute prescribes rules to be observed in the execution and publication of wills which it does not prescribe in regard to the execution and delivery of other written instruments, the proof of the several acts so prescribed is the same as the proof required to establish any other fact. Thus if the instrument to be proved is in existence and within reach of the process of the court, it must be produced in court. If lost or destroyed, or its production from any cause becomes impossible, and that appears to the satisfaction of the court, secondary evidence may be resorted to. If there are witnesses to the execution of the instrument, who have subscribed their names as such (and without subscribing witnesses se-

lected by the testator himself a will has no force,) they must also be produced and examined, if living and within the power of the court. If they be dead or beyond the jurisdiction of the court, secondary evidence may also be resorted to in this contingency, and proof taken of their handwriting. So if the witnesses when produced and examined have lost all recollection of the transaction, and especially of the extrinsic facts, other evidence may be again summoned to supply the imperfection of the witnesses' memory. For example, when the witnesses cannot recall to memory the circumstance that they subscribed at the request of the testator, that fact stated in the attestation clause will be some evidence to show that such a request was made. And if the witnesses are men of good character, and there is no doubt as to their signatures, or any other suspicious circumstances, the attestation clause would be deemed sufficient evidence of a request. In short the law lays down no stubborn inflexible rules in such cases, but accepts the best evidence that can be procured adapted to the nature of human affairs, human infirmities and casualties, which tends with reasonable certainty to establish the fact in controversy. The proof of a lost or destroyed will proceeds upon the theory that it is not in existence and cannot be produced before the surrogate, and therefore the case is one of secondary evidence exclusively.

It is not disputed that the deceased was a resident of Middletown at the time he died, and that he expired at the house of his brother in law, Harvey Everitt, at that place, on the 19th of January, 1842, then being of the age of 21 years and upwards, without wife or children, leaving his father, Walter Everitt, and various other relatives surviving him. Henry S. Beakes states in his evidence that he knew the deceased, and was present with him in his illness from six to 15 days before his death, in a bed room adjoining the sitting room at Harvey Everitt's house. He was invited to come there by Walter Everitt, the father of the deceased. He saw Mrs. Sally A. Everitt at the house, and no one else

that he recollects. He remained at the house about two hours. While there he received instructions, which he wrote down, from the deceased, for a will, which he then drew in his own handwriting. This will may or may not have been executed; he has no recollection that it was, and none that it was not executed. Nor has he any memory what became of it. He remembers the will contained directions for building a vault upon land at Middletown, and a bequest of the one half of a horse called Jack, to his father, Walter Everitt, who owned the other half. He examined amongst his papers for the will, but was unable to find it. In respect to Mr. Beakes's presence in the sick room of the deceased at the time he mentioned, he is corroborated by the evidence of Harvey Everitt, Sally A. Everitt and Mary Jane Kinsey, who saw him there engaged writing in the presence of the deceased. David Hoyt, who is said to be the other subscribing witness, was sworn and examined, and said he had no recollection whatever of witnessing the will. There is always some reason to think that the will of a deceased person will find its way into the possession of some of those named in it as executors. Lewis H. Everitt and Harvey Everitt are the executors alleged to have been appointed in the will in controversy. The former is dead, and his son, Samuel L. Everitt, was examined as a witness and said he was one of his father's executors. After his father's death, which was in October, 1846, he found amongst his papers an instrument purporting to be the will of Walter C. Everitt. It covered two pages of paper. He knows the handwriting of the deceased, and of Henry S. Beakes and of David Hoyt. The will was signed with the name of Walter C. Everitt in the handwriting of the deceased, was witnessed by Henry S. Beakes and David Hoyt as subscribing witnesses, in their own handwriting, and the body of the will was also in Mr. Beakes's handwriting. He also stated the contents of the instrument, which corresponded substantially with the copy to which I will refer hereafter. A few months after his

Everitt *v.* Everitt.

father's death he gave the will to his grandfather, Walter Everitt. Sally A. Everitt, the sister of the deceased, and wife of Harvey Everitt, remembers the visit of Mr. Beakes at her house, upon the occasion of her brother's last illness. She heard him reading a paper to the deceased in the bed room. When Mr. Beakes announced that he was ready, she, together with David Hoyt who had been in the sitting room some time before that, entered the bed room. She assisted to raise her brother up in the bed, procured a book for him to write upon. Saw him sign his name; heard him declare the paper to be his last will and testament, and ask Mr. Beakes and Mr. Hoyt to sign their names as subscribing witnesses, and saw them sign their names accordingly in the deceased's presence. The deceased requested Mr. Beakes to take the will with him, who thereupon folded it up, put it in his pocket and took it away with him. The next week after her brother's death, Mr. Beakes, Mr. Hoyt, Harvey Everitt, Walter Everitt, Freelove Kirk and herself were present at her house. Mr. Beakes came there at the request of her father Walter Everitt. While there he procured and read what purported to be the will of her deceased brother, and took it away with him again. Some two or three weeks afterwards her husband, Harvey Everitt, brought home with him what purported to be the same will. She and her husband took two copies of it, which she assisted him to compare and found them correct. One of these copies she gave to her father, and the other is that now produced in court. That given to her father she has not seen since. Harvey Everitt, the husband of Sally A. Everitt, recollects the time referred to by Henry S. Beakes when he prepared the will. He saw the latter in the room with the deceased, writing. Walter Everitt, the father of the deceased, David Hoyt and his wife, Sally A. Everitt, were in the adjoining room. He did not see the will executed. After the death of Walter C. Everitt he was present at his own house at the time referred to by Sally A., when Mr. Beakes read the will. He heard it

read and knew its contents. The latter took the paper away with him. He afterwards obtained the paper from Mr. Beakes and took it to his own house, where it remained some three weeks. While there, with the aid of his wife, he took two copies of the paper, one of which he produced in court. He compared it with the original (so called) and knows it to be correct. He is acquainted with the handwriting of the deceased as well as that of Henry S. Beakes and David Hoyt. The signature Walter C. Everitt to the instrument was in the handwriting of Walter C. Everitt, and the body of it as well the name Henry S. Beakes, signed as subscribing witness, was in Mr. Beakes's handwriting, and the name David Hoyt, also signed as a subscribing witness, was in the handwriting of David Hoyt. The instrument was returned by him to Henry S. Beakes, and he saw it no more. This witness also remembered the contents of the paper read by the latter at the witness' house, independent of the copy, and they corresponded in all respects with the copy produced.

This is a substantial summary of the evidence produced upon the trial. There also is the evidence of the person who drew the will, but who does not recollect its execution or non-execution. There is also the evidence of three witnesses who saw him at the time and place to which he refers, and there is also the evidence of three witnesses, who saw David Hoyt, the other subscribing witness, there at the same time. There is also the evidence of two witnesses who were present a few days after the decease of Walter C. Everitt, and heard Henry S. Beakes read the paper he produced as the will of Walter C. Everitt. Mr. Beakes is a man of undoubted veracity and high character, accustomed to the transaction of business, and incapable of doing as he is proved to have done, unless the paper he read was the will of the deceased, executed according to the forms of law. But this is not all. We have also the evidence of a witness of undoubted credibility who saw her brother, the deceased, sign a will, publish it to the witnesses Henry S. Beakes and David Hoyt, and ask them to become

subscribing witnesses thereto, which they did in her presence. We have also the testimony of two witnesses who know the handwriting of the testator as well as that of both the attesting witnesses, who saw it after the death of the former a number of times, and who prove the genuineness of the signatures of the testator and the witnesses, as also the body of the instrument to be the handwriting of Mr. Beakes. And further, there is to the copy produced a full attestation clause which asserts that the essential requisites of the statute were observed in the execution of the instrument. It is a fact worthy of notice that both the original paper and one of the copies spoken of by Sally A. Everitt passed into the hands of Walter Everitt, the father of the deceased. They have not been seen by any of the witnesses since. Walter was heir at law and was also entitled to the personal estate in the event of his son dying intestate. He had therefore no pecuniary interest in the preservation of these papers.

The proof is positive, clear and uncontradicted; nothing could add to its force but the production of the instrument itself. The 74th section of the statute requires that it shall be proved to have been in existence at the time of the death of the testator, and that its provisions shall be clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being deemed equivalent to one witness. This in my opinion has been done; and unless there is some bar or legal impediment in the way, the plaintiffs are entitled to a decree or judgment that the will be established and admitted to record.

This bar the counsel for the defendants claim to be the lapse of time—the statute of limitations. More than twenty years elapsed from the death of the testator, Walter C. Everitt, to the commencement of these proceedings, and they therefore insist that it falls within the principle of the ten years' limitation. The loss of a deed or other written instrument is not always a ground for relief in a court of equity; for although a party may be entitled to a discovery of the original existence

and validity of the deed, courts of law may afford just the same relief, since they would receive evidence of the loss and contents of the deed, just as a court of equity would do. To enable a party therefore to claim equitable relief he must establish that there is no remedy at law, or no remedy which is adequate and adapted to the circumstances of the case. (1 *Story's Eq. Juris.* 84.) When, however, there are other equities calling for the action of the court besides the establishment of the deed, then the equity courts will entertain jurisdiction and grant the appropriate relief at the same time. The 70th and 71st sections of the general provisions of the revised statutes applicable to wills, were intended to confer upon the court of chancery authority to take proof of the execution and validity of lost wills, and to establish the same as distinct and independent of the other equities calling for the relief referred to by the last named writer. Section 70 declares that "whenever any will of real and personal estate shall be lost or destroyed by accident or design, the court of chancery shall have the same power to take proof of the execution and validity of such will, and to establish the same, as in the case of lost deeds." (2 *R. S.* 67.) And section 71 declares that when so established by the decree of the court, such decree shall be recorded by the surrogate, and letters testamentary or of administration, with the will annexed, shall be issued by him in the same manner as upon wills duly proved before him. No other equities or other ground for equitable interference need be stated in the complaint but the loss or destruction of the will; and the final decree when the plaintiff prevails is limited to its being established and admitted to record.

In *Bowen* v. *Idley*, (6 *Paige*, 46,) the chancellor remarks incidentally, that "before the revised statutes the court had jurisdiction in a suit brought to establish a will of real estate which had been fraudulently destroyed, either during the life of the testator or afterwards, without his knowledge or consent, or when he was mentally incapable of consenting. And

the jurisdiction of the court [he remarks] is now extended by statute to the case of a will of personal estate." If he intended to say that such was the jurisdiction of the court, without the qualification referred to by Judge Story, it is open to very grave doubt. There must, I think, have been other equities dependent upon and resulting from the establishment of the instrument to warrant the interposition of the court. Nor is the new remedy given by the statute confined to wills of personal estate. Its provisions are general, embracing, by express words, wills of real and personal estate, with this most weighty direction, that the decree establishing the instrument shall be recorded by the surrogate, and it thus becomes his authority for issuing letters testamentary or of administration with the will annexed, in the same manner as upon wills duly proved before him. I can hardly be mistaken in thinking this a new power conferred upon the court. (*See also the cases referred to in Colton* v. *Ross,* 2 *Paige,* 396.)

In support of the defense of the statute of limitations, I am referred by the counsel for the defendants to the case of *Bucklin, admin'r,* v. *Ford, executor &c.,* (5 *Barb.* 393.) This case is authority for the rule that the statute of limitations does not begin to run against an action which accrued in favor of the estate of a deceased person, after his death, until there is some person in existence capable of suing, or at least some person to whom the right of action may accrue. Applied to the present case it will put it out of the power of those who may have taken and appropriated the personal property of Walter C. Everitt to their own use, after his death, to plead the statute with effect in an action to recover the value thereof, until six years shall have elapsed after the granting of letters testamentary upon the proof of his will. I cannot perceive that this authority has any application whatever to the present case. Its influence (if any) is rather adverse to the defense; for if the statute does not run against a claim to recover the personal estate of the testator, wrongfully taken or appropriated after his death, until the appoint-

ment of his personal representative, no good reason can be assigned why it should run against a proceeding which has no other object or purpose but to qualify and clothe some one with the legal authority to assert a claim and bring an action to recover the converted property. The 52d section of the act prescribing the time for the commencement of suits in courts of equity, (2 *R. S.* 2*d ed.* 229,) is in these words: "Bills for relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue, and not after." This provision is manifestly applicable to bills filed for relief exclusively. The words are "bills for relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for," &c. The antecedent words, "bills for relief," applying to all the cases which can possibly arise under the provisions of the section. The men who framed these statutes, several in number, were not only accurate and exact practitioners in the courts, but were amongst the most eminent jurists of their own times. They doubtless employed the words "bills for relief," in the statute, in their strict legal and technical sense, and had in mind the obvious distinction to be found in the books upon equity pleadings between bills which pray for relief and those which do not pray for relief. "In a broad sense," says Mr. Story, in his treatise upon Equity Pleadings, "all bills in equity may be said to pray for relief, since they seek the aid of the court by some decree or decretal order to remedy some existing wrong or apprehended wrong or injury. But in the sense in which the words are used in courts of equity, such bills are deemed bills for relief which seek from the court in that very suit a decision upon the whole merits of the case set forth by the plaintiff, and a decree which shall ascertain and protect present rights or redress present wrongs. All other bills which merely ask the aid of the court against possible future injury or to support or defend a suit in another court of ordi-

Everitt *v.* Everitt.

nary jurisdiction are deemed bills not for relief." He says the distinction is not formal merely but substantial, involving the most important consequences. He gives as an example of bills not praying for relief, those filed to perpetuate testimony and to examine witnesses *de bene esse,* bills of discovery of facts resting within the knowledge of the party against whom they are exhibited, or the discovery of deeds, writings or other things in their custody or power. (*Story's Eq. Plead.* 17, 19.) The complaint in the present action prays that the execution of the will may be proved and its validity established to the end that it may be admitted to record, and nothing else. It does not seek to restrain the defendants from doing any future acts, nor to establish any rights or redress any wrongs to property. It seeks to recover no money or articles of personal property, or to recover and be let into the possession of real estate. In short it asks no relief, in the technical sense of the word, against any of the defendants. It is not a case within the spirit as it certainly is not within the letter of the statute concerning the commencement of suits in courts of equity to which I have referred.

The plaintiffs are entitled to a decree or judgment that the will be established and recorded as the will of Walter C. Everitt, by the surrogate of the county of Orange. The taxable costs of the parties who have appeared and answered to be paid out of the estate of the deceased Walter C. Everitt, in the usual course of administration.

As Darwin Everitt and S. Genevieve Everitt have no interest in the estate or will of the deceased, Walter C. Everitt, the complaint as to them is dismissed.

[ORANGE SPECIAL TERM, March 8, 1864. *Brown,* Justice.]