(55 Misc. Rep. 162.)

In re FOLEY'S WILL.

(Surrogate's Court, Oneida County. June, 1907.)

WILLS—PROBATE—EVIDENCE OF EXECUTION.

A will offered for probate was executed by testatrix by making her mark. The witnesses were both dead, and there was no evidence as to what occurred at the time of the execution of the will. The attestation clause recited compliance with the statutory requirements, and declarations of testatrix that the paper offered was her will, which were made after its alleged execution, were fully established. *Held*, that under Code Civ. Proc. § 2620, providing that, if all subscribing witnesses to a will are dead, the will may be established on proof of the handwriting of testatrix and of subscribing witnesses and of such other circumstances as would prove the will on the trial of an action, the will would be admitted to probate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 729.]

In the matter of the probate of the will of Mary Foley, deceased. Probate decreed.

Timothy Curtin, for proponent.
J. W. Rayhill, for contestant.

SEXTON, S. Mary Foley died at Utica, N. Y., on the 31st day of January, 1907, and on February 16, 1907, a petition for the probate of her alleged will, duly verified by Sarah Farrell, as executrix, was filed in the surrogate's office, which will was dated August 17, 1891. John Foley, husband of the deceased, on April 10, 1907, filed with said court a verified answer to said petition, alleging that said will was not executed and published as required by law, and was not the free or voluntary act of the deceased, and was the result of fraud and undue influence practiced upon the deceased by the sole beneficiary, Sarah Farrell.

The will offered for probate was entirely in the handwriting of Attorney Richard W. McIncrow, except the mark of the testatrix and the signature of John F. Shaughnessy. McIncrow and Shaughnessy signed as witnesses to the mark, and as attesting witnesses to the will, at the end of the attestation clause. It appears from an examination of the will that said McIncrow and said Shaughnessy signed as witnesses to the signature of the testatrix by mark at the left of the mark, and at the left of these words, "Mary X Foley," and substantially on the same line.

her
mark

Said will was drawn upon legal cap paper, and both sides and each line thereof consecutively written upon, from the beginning of the will to the close thereof, consisting of about 2½ pages, and without any alterations or erasures of any kind appearing thereon, and with an adhesive paper seal at the right of testatrix's mark. At the time of offering said will for probate both of the subscribing witnesses, McIncrow and Shaughnessy, were dead, and had been for several years.

Certain requisites are prescribed by statute to be observed in the execution of a will: (1) It shall be subscribed by the testator at the

end of the will. (2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses. (3) The testator at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament. (4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator. That the will is in the handwriting of Richard W. McIncrow, and that he and John F. Shaughnessy signed their names as witnesses to testatrix's signature by mark, and as subscribing witnesses, was established upon the trial by competent evidence beyond reasonable doubt. No eyewitness to testatrix's mark was produced, nor was any evidence given as to what occurred at the time of the execution of the will in fulfillment of the statutory requirements, unless the attestation clause at the end thereof, which fully recites a compliance therewith, can be accepted in lieu of such proof. While the attestation clause is not evidence, it is a signed recital from which courts may infer that the statutory requirements were complied with, as the presumption will not be indulged that a reputable witness would have so signed unless the clause was true, and probate is based on the truth of that inference. Matter of Briggs, 47 App. Div. 47, 62 N. Y. Supp. 294. This rule is very old. It was laid down in Losee v. Losee, 2 Hill, 612, and followed in Matter of Hesdra, 119 N. Y. 617, 23 N. E. 555. It applies in the case of deceased subscribing witnesses. Judge Ruger, in the Hesdra Case, said:

"Proof of the signature of a deceased subscribing witness is presumptive evidence of the truth of everything appearing upon the face of the instrument relating to its execution, as it is presumed the witness would not have subscribed his name in attestation to that which did not take place."

The presumption of compliance is strengthened where the execution of the will was supervised by an attorney. It has "always been considered to afford a strong presumption of compliance with the requirements of the statute, in relation to the execution of wills, that they had been conducted under the supervision of experienced persons familiar not only with the forms required by law, but also with the importance of a strict adherence thereto." Matter of Cottrell, 95 N. Y. 329, and cases cited. In a case like this, where both subscribing witnesses to the will are dead, section 2620 of the Code of Civil Procedure provides that:

"If all the subscribing witnesses to a written will are, or if a subscribing witness, whose testimony is required, is dead  *  *  *  or if such a subscribing witness has forgotten the occurrence, or testifies against the execution of the will; the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

The only serious question in the case under consideration, and the one relied upon by the contestants to defeat probate, is that there is no evidence that the testatrix made her mark where it appears on the will. No one was produced upon the trial who saw the mark made. The testatrix, having signed her mark, and being an illiterate person, we

have no standard for comparison. Under the statute all that is required, in addition to proof of the handwriting of the testatrix and the subscribing witnesses, is "such other circumstances as would be sufficient to prove the will upon the trial of an action." The fact that we have a mark, instead of a signature. to deal with, and no eyewitness, and no case precisely in point, should not dethrone reason or stay the application to the facts of well-known principles of law. If the testatrix had written her name, and no person could be produced who saw it written, or could identify it as her signature, under a strict construction of the statute in this particular case, no distinction would exist between the two methods of signing, so far as the evidence goes. So that any evidence or circumstance tending to establish a written signature as genuine would have equal application to a signature by mark. Suppose a person saw the testator sign his name and should forget the fact, or suppose the attesting witnesses should both forget about it, and forget that they signed as such, and should forget all the facts stated in the attestation clause, or should go so far as to corruptly swear that they and the testator never signed the will. Still upon proof of their handwriting and that of the testator, with a full attestation clause and other facts and circumstances in support of the genuineness of the will, sufficient to satisfy the court, probate thereof would be sustained. Matter of Hesdra's Will, 119 N. Y. 617, 23 N. E. 555, and cases cited; Code Civ. Proc. § 2620.

Where the subscribing witnesses are living, a much stricter rule prevails in the establishment of a will. Code Civ. Proc. §§ 2618, 2619. Where the subscribing witnesses are dead, the rule is relaxed under section 2620 of the Code. This section permits probate of a will upon such evidence as would establish it upon the trial of an action. Ordinary common-law evidence is sufficient if from it due execution can reasonably be inferred. Harris v. Harris, 26 N. Y. 433. The same facts will establish a will in a special probate proceeding, under section 2620 of the Code in Surrogate's Court. Matter of Oliver, 13 Misc. Rep. 466, 34 N. Y. Supp. 706. That evidence does not go to the extent of a full disclosure of all that must have occurred in a given transaction, such as the execution of a will, is no ground for its entire rejection, if it is supported and strengthened by circumstances and reasonably founded presumptions such as lead the mind to conclusions which accord with legal principles and human experience.

It appears from the evidence that in July, 1903, the testatrix was ill, and the doctor in attendance called in Attorney Fitzgerald to draw her will, and he testified on the trial that he was told by the testatrix at that time that she had made a will once and did not want to make any more, and that some of the best men in Utica had signed it. Ann Farrell was shown the will in question thereafter, and positively identified the one in court as the one formerly shown to her. At testatrix's request, she took the will to Attorney Fitzgerald, and thereafter reported to testatrix that he said the will was good, though the subscribing witnesses were dead. Bridget Leddy, a neighbor, testified that she talked with testatrix at about the time she made her will in regard to it, and again when the attesting witness McIncrow died, and again after Mr. Fitzgerald called; that, at testatrix's request, she asked Attorney

Coupe if the will was good when both witnesses were dead, and reported to testatrix that he said it was. Testatrix told witness that Lawyer McIncrow and Mr. Shaughnessy were the witnesses to the will, and that she had given all her property to her sister, Sarah Farrell, both of which statements are verified by the will. It also appears that the testatrix left no children, never had any, and did not agree with her husband, the contestant, and that he left her on different occasions, on one of which he went to Canada. She died January 31, 1907, at the age of about 80 years, in full possession of her faculties, and about 16 years after the date of her will. The contestant offered no evidence on the trial contradictory of a single fact stated in the attestation clause, or upon any subject, and depends for success upon the alleged failure of proof on the part of proponent.

An examination of the will shows that the subscribing witnesses also signed as witnesses to mark of testatrix, and at the left thereof, at the end of the will. Now, the testatrix's mark was there, and put there by her, or upon her authority, before the witnesses signed, or the will is a forgery—a conclusion revolting to the mind in the absence of affirmative evidence, and in the face of evidence of Attorney Lewis that "Mr. McIncrow was an honorable member of the legal profession, and a careful man." The following is the attestation clause:

"The foregoing instrument signed, sealed, published and declared, as, for and acknowledged to be her last will and testament by Mary Foley, the testatrix therein named, in our presence, and we in her presence, and at her request, and in the presence of each other subscribed our names as witnesses to said last will and testament at the city of Utica, N. Y., this 17th day of August, 1891."

It recites that testatrix signed the will in the presence of the attesting witnesses, a necessary statutory requirement. Does a full attestation clause, signed by reputable witnesses, with none of the facts recited therein contested, and with no evidence of fraud, or surrounding suspicious circumstances, together with a natural disposition of the property, raise such a presumption of due and formal execution as to sustain probate, in the absence of positive proof that testatrix made the mark, keeping in mind her subsequent declarations that she had made a will? "If, however, the attestation clause is full, the signatures genuine, the circumstances corroborative of due execution, and no evidence disproving a compliance in any particular, the presumption may be lawfully indulged that all the provisions of the statute were complied with, although the witnesses are unable to recollect the execution or what took place at the time." Matter of Kellum's Will, 52 N. Y. 517, and cases cited. If from a full attestation clause the presumption is permitted that the will was published, as well as other statutory requirements, why not, then, that it was duly signed? No witness testified that the testatrix signed this particular will. She declared on several occasions that she had made a will, and on one occasion gave the names of the witnesses, and the name of the object of her bounty. This evidence was competent, because they were the declarations of one from whom the parties to this proceeding claim. Matter of Briggs, 47 App. Div. 47, 62 N. Y. Supp. 294. Matter of Marsh, 45 Hun, 107. The testatrix manifested unusual interest in her will, and obtained the

advice of two attorneys as to its validity. If she had not, in fact, signed the will offered for probate, how can her acts and conduct be explained? The will is drawn and signed in such a manner that the witnesses could not have signed it as witnesses to her signature by mark without having seen the mark. The mark itself is inclosed in these words in the handwriting of McIncrow, one of the witnesses, "Mary

X Foley." Did Mr. Incrow write these words, then make the mark appearing between them, and induce or deceive Mr. Shaughnessy into signing as witness thereto, and to certifying that Mary Foley, the testatrix, made the X mark herself? It is hard to believe. The declarations of the testatrix as to making this will, with the other facts and circumstances in evidence, are all that is required to presumptively prove the genuineness of her signature. It amounts in law to a binding admission of the genuineness thereof. Suppose testatrix was alive, and her signature to a deed by mark was involved in the trial of an action, and she denied it. Upon proof of the signature of the deceased notary, who witnessed her signature by mark and took her acknowledgment, would there not be a question of fact for a jury? I think enough has been shown, with the warrantable inferences, to make the question as to whether testatrix signed this will by mark one of fact. Upon the question of execution I know of no case like the one before me.

In Re O'Hara, 2 N. Y. Bul. 83, handwriting of two subscribing witnesses was proved, one of which was an attorney, and the will was found among decedent's papers. Without proof of the handwriting of testator the will was admitted to probate on the theory that the evidence was sufficient to establish it upon a trial at law. In Rider v. Legg, 51 Barb. 260, in a partition action, upon proof of handwriting of two dead subscribing witnesses to a will, with a perfect attestation clause and other circumstances tending to favor the probability that the will was genuine, it was received in evidence without proof of the signature of the testator. I am cited to several cases which would seem authority for denying probate, but, upon close examination, it will be seen that the conclusions are reached upon a state of facts differing materially from those before me. Because of the conflict of facts alleged precedents are often of little value. A constipated construction of the statutes should not be favored, or smoky reasoning invoked to stifle the surviving wishes of a testator, where there is no denial of any facts in the attestation clause, and no proof of undue influence, or mental incapacity or weakness, or suspicious circumstances surrounding the execution of a will natural in its provisions, and, particularly, where such judicial nicety would tend to blacken the memory of the dead.

The will in question was executed as required by law, and is received in evidence. Findings and a decree admitting it to probate may be prepared accordingly.

Probate decreed.