### In re CORCORAN'S WILL.

### CORCORAN v. CORCORAN et al.

(Supreme Court, Appellate Division, Fourth Department.   May 3, 1911.)

1. WILLS (§ 297*)—PROBATE—DECLARATIONS OF TESTATOR—ADMISSIBILITY.
    Declarations of testator that he had made a will drawn by a lawyer named and witnessed by a third person, and that he had given his estate to two of his daughters, are incompetent to prove the execution or continued existence of the will drawn by the lawyer and witnessed by himself and the third person, but are competent to prove due publication of the will in the presence of the subscribing witnesses, and that he knew that the paper drawn by the lawyer was his will so that no fraud was practiced on him, especially where he was illiterate and compelled

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to rely on information given him by others as to the contents of the instrument.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 690–696; Dec. Dig. § 297.*]

2. WILLS (§ 111*)—EXECUTION—SIGNATURE OF TESTATOR.

A testator may subscribe his will by his full name or by his mark.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 267–275; Dec. Dig. § 111.*]

3. WILLS (§ 302*)—EXECUTION—PROOF OF HANDWRITING.

Under Code Civ. Proc. § 2620, permitting the establishment of a will on proof of the handwriting of testator and of the deceased subscribing witnesses, a testator who cannot write has no handwriting, and, where he signs by mark, any legal proof establishing his signature is sufficient.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 701; Dec. Dig. § 302.*]

4. EVIDENCE (§ 562*)—HANDWRITING—OPINION EVIDENCE.

Opinion evidence as to the genuineness of an ordinary mark signature is inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2382; Dec. Dig. § 562.*]

5. WILLS (§ 302*)—EXECUTION—RECITALS IN ATTESTATION CLAUSE.

Recitals in the attestation clause of a will that testator published his will, and signed or acknowledged his signature thereto in the presence of the attesting witnesses who are dead and whose signatures are proved, warrant the inference of the due execution of the will signed by testator's mark, especially where one of the attesting witnesses was a lawyer presumably accustomed to draw and supervise the execution of wills.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 302.*]

Appeal from Surrogate's Court, Oneida County.

Proceedings by Mary Corcoran and another for the probate of the will of Cornelius Corcoran, deceased. From a judgment of the Surrogate's Court admitting the will to probate, John F. Corcoran appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

H. C. Sholes, for appellant.

James Coupe, for respondents.

ROBSON, J. Cornelius Corcoran died January 17, 1894, leaving, him surviving, a widow and one son, the appellant, and three daughters, the respondents, his only heirs at law and next of kin. The widow survived her husband about seven years. The will in question bears date January 17, 1894. Petition for its probate was presented to the Surrogate's Court June 14, 1910. Objections to the probate were filed by the son, which fairly put in issue the making and execution by deceased of the instrument in question. The evidence on the hearing was given by proponent; contestant offering no proof. The effect of the disposing provisions of the will is to give to the widow, if she should survive the testator, a life estate in his property, both real and personal, and subject to the life estate the whole property is given to

the daughters, Mary and Nellie Corcoran, in equal shares. These two daughters are then named executors of the will, which concludes as follows:

"In witness whereof I have hereunto subscribed my name and affixed my seal at the city of Utica, state of New York this seventeenth day of January, eighteen hundred and ninety-four.          Cornelius X Corcoran. [Seal.]

his

mark

"Witnesses:
          "Rich'd W. McInrow.
          "Thomas S. Geary.
"The foregoing instrument, signed, sealed, published and declared as and for and acknowledged to be his last will and testament by Cornelius Corcoran, the testator therein named in our presence and we in his presence and in the presence of each other subscribed our names at the end thereof subscribed our names as witnesses thereto at the city of Utica, N. Y., this 17th day of January, A. D. 1894.
          "Richd. W. McInrow, residing Utica, N. Y.
          "Thomas S. Geary, residing Utica, N. Y."

At the time the will was offered for probate, both of the subscribing witnesses were dead. McInrow was a lawyer who had for many years prior to his death been in active practice of his profession in the city of Utica. The will is entirely in his handwriting, except the cross-mark between the words "Cornelius" and "Corcoran" at the end of the will, and the signature of Geary below the word "Witnesses," and his signature and the words "residing Utica, N. Y.," appearing at the end of the attestation clause. The genuineness of Geary's signatures and that the words indicating his residence were written by his hand were duly proved. The instrument is free from interlineations and erasures. It was found by one of the executors named therein after testator's death. When and under what circumstances it was found do not appear. Sarah McCaffrey, a daughter of the testator, who was not a beneficiary under the will, testified on the hearing that on the day before his death she had a talk with her father, and relates the conversation as follows:

"He told me that Mr. Geary was a witness to the will and didn't speak of any other witness. He said Mr. McInrow, the lawyer, drew it. That is not the only talk I had with him on the subject of the will. I had another talk before that. It was all of two or three years before he died. It was at the same place in the dining room of his home. He told me he had made his will; that he had made it for my sisters and wanted to know if it was satisfactory to me, and I told him it was. He said my sisters kept the house and did the work, and also, 'I suppose you have enough and don't care.' He did not tell me how he had given it, what share to each one. He said he had made his will for both girls, both sisters. He didn't say how much he had left them. * * * He told me Mr. McInrow drew the will and that Mr. Geary witnessed it. In either of these talks he did not tell me where he kept the will, nor where it was left." °

This evidence was taken subject to contestant's objection and exception. The same witness testified:

"My father could not write. He wrote his name· by putting a cross on the paper."

[1] The evidence of declarations of deceased to which objection was taken as noted above was competent on an issue then before the court

for determination. It was not competent as proof of the execution, or continued existence of the will. Matter of Kennedy, 167 N. Y. 171, 60 N. E. 442. But contestant in his answer to the petition alleged that testator did not publish the alleged will in the presence of witnesses whose names are subscribed thereto, and that it was not freely, or voluntarily, executed as his last will and testament. Oral statements, or declarations, of the deceased, are, as said in the case above cited (page 171 of 167 N. Y., page 442 of 60 N. E.), admissible "to prove the due publication of a written will. They are also admissible upon an issue with respect to the mental capacity of a person to make a will, since such declarations tend to reveal the true condition of his mind with respect to the subject-matter of the controversy and have some bearing upon the question whether a paper purporting to be his will is really the production of his own mind or of another." The evidence was also admissible to show that the deceased knew a paper drawn by McInrow was a will, and that no fraud or imposition upon the deceased had been practiced. Matter of Nelson, 141 N. Y. 152, 36 N. E. 3. Especially in a case like this, where it appears that the testator was illiterate and presumably compelled to rely upon information given him by another as to what were the contents and character of the instrument, would such evidence be important.

Appellant's principal contention is that proponent failed to establish that Cornelius Corcoran signed the instrument offered for probate as his will.

[2] The signature of the deceased, if the will was in fact signed by him, is the cross-mark. Jackson v. Jackson, 39 N. Y. 153, 159. As was said in that case:

"The testator may subscribe the will by his full name, or by his mark, and, if he does so, *that* is the subscription required by the statute."

[3] The method and requirements of the proof of a will, when all of the subscribing witnesses are dead, are prescribed in section 2620 of the Code of Civil Procedure, and, so far as material, are as follows:

"If all the subscribing witnesses to a written will are * * * dead, * * * the will may nevertheless be established upon proof of the handwriting of the testator and of the subscribing witnesses and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

The statute seems in terms to require proof of the handwriting of the testator. But, if the testator cannot write, clearly he has no handwriting in the ordinarily accepted sense. If he signs by cross-mark, that is his signature, not the words written around it by another. Jackson v. Jackson, supra.

[4] It would be very unusual that one habitually signing by cross-mark would exhibit peculiarities in signature differentiating his mark from that made by any other. Opinion evidence as to the genuineness of an ordinary cross-mark signature is therefore not admissible. Matter of Hopkins, 172 N. Y. 360, 65 N. E. 173, 65 L. R. A. 95, 92 Am. St. Rep. 746. Proof of testator's handwriting, filling the statutory requirement, is made, if one witness is able to verify the testator's mark as made in his presence. Matter of Wilson, 76 Hun, 1, 27 N. Y. Supp.

957. It would seem that it is proof of the signature, and not strictly proof of the handwriting of the testator, that the statute requires. Does the statute in such case require that independent proof of the testator's signature outside of and beyond the recitals in a full attestation clause that the will was signed by the testator in the presence of each of the deceased witnesses; there being nothing to raise a doubt that the signature was in fact made by the testator, and no circumstance indicating fraud or imposition practiced upon him? It should be observed that the statute does not in terms indicate that such proof is required. It requires proof of the signature, as we have seen. Any legal proof establishing the signature should therefore suffice. In an action at law signature by mark may be proved by the attestation signed by a witness since deceased whose signature is proven. Losee v. Losee, 2 Hill, 609. In the opinion of Judge Nelson in that case the principle is thus stated:

"Proof of the signature of a deceased subscribing witness is presumptive evidence of the truth of everything appearing upon the face of the instrument relating to its execution; as it is presumed the witness would not have subscribed his name in attestation of that which did not take place. But this presumption may be rebutted, and hence the propriety and even necessity of permitting him to be impeached in the usual mode as if he were living and had testified at the trial to what his signature imports."

This statement of the law has been quoted and adopted when the probative force of the recitals in the attestation clause of a will was under consideration. One of the more recent of such cases is Matter of Hesdra, 119 N. Y. 615, 23 N. E. 555. This principle is thus stated in Wigmore on Evidence, § 1511:

"When the attester's signature is identified as genuine, what does the attester thereby purport to testify to? Does he purport to testify at all? Assuming that the signature is appended to a clause of attestation expressly stating the facts of execution, it is clear that the signed attestation is a *testimonial assertion of all the facts thus required to be stated.* This has never been doubted for the case of an attester deceased, or otherwise unavailable in person."

The probative force of an authenticated attestation clause to a will, complete in its recitals, as, either presumptive proof of the evidentiary facts stated therein, or a source from which such facts may by inference be established, has long been recognized. Orser v. Orser, 24 N. Y. 51; Willis v. Mott, 36 N. Y. 486, 488; Jackson ex dem. v. Van Dusen, 5 Johns. 144, 4 Am. Dec. 330. This latter case was an action at law in which a will signed by mark had been admitted in evidence on proof of the handwriting of two of the three deceased attesting witnesses, and it was held that the evidence was sufficient to establish the formal execution of the will. The fact that a subscribing witness was, as McInrow must be presumed to have been, accustomed to drawing and supervising the execution of wills, and familiar with the law upon that subject, gives persuasive force to the inference drawn from his certificate that the requisite formalities were observed. Orser v. Orser, supra; Matter of Cottrell, 95 N. Y. 339. The abundance of reported cases in which controlling effect in determining as a fact that the formalities required by the statute have been observed has been

given to the recitals in attestation clauses makes further citation of individual cases unnecessary. It is incumbent upon the proponent to establish the due execution of the will. This is a fact to be established "like any other fact in view of all the legitimate evidence in the case." Orser v. Orser, supra.

[5] The recitals in an attestation clause that the will was signed, or his signature acknowledged, by the testator in the presence of the two witnesses, who, it is shown, are since deceased and their signatures satisfactorily proved, would warrant the inference that such was the fact in any other legal proceeding than the proof of a will. I can see no good reason why an exception should be made in such a proceeding, unless such exception is made by the statute. Such exception does not in terms appear in the statute which has been quoted; neither does it seem to exist as an inference from the language used.

Cases in Surrogate's Court may be cited where it was held that independent proof of testator's signature was required and probate has been denied because such proof was not furnished. Among these are Matter of Walsh, 1 Tuck. 132; Matter of Reynolds, 4 Dem. Sur. 68; Matter of Porter, 1 Misc. Rep. 262, 22 N. Y. Supp. 1062. The contrary view is maintained in a well-reasoned opinion by the learned surrogate, who made the decree from which this appeal is taken. Matter of Foley, 55 Misc. Rep. 162, 106 N. Y. Supp. 474. His position receives support from the decision of Surrogate Calvin in Matter of O'Hara's Estate, 2 N. Y. Monthly Law Bull. 83, cited in his opinion. Appellant's counsel urges the case of Matter of Burbank, 104 App. Div. 312, 93 N. Y. Supp. 866, affirmed 185 N. Y. 559, 77 N. E. 1183, as an authority decisive of the present case. That case is an authority that the signatures of both subscribing witnesses to the will must be established by competent proof. The effect of the recitals in an attestation clause when the signatures of the deceased witnesses had been duly proven was not directly involved, or determined.

The decree should be affirmed, with costs. All concur.