In the Matter of Proving the Last Will and Testament of GEORGE W. EYETT, Deceased.

Surrogate's Court, Ulster County, March 2, 1925.

**Wills — execution — proceeding to probate holographic will devising and bequeathing testator's real and personal property to his widow — testator's name, while appearing in his own handwriting in attestation clause, does not appear as signature immediately below last line of will proper — wife unable to produce subscribing witnesses — presumption of due execution exists where it is reasonable to infer in absence of evidence to contrary, that testator's signature in attestation clause is signature to which subscribing witnesses attested — probate will not be denied under Decedent Estate Law, § 21, subd. 1 — will admitted to probate pursuant to Surrogate's Court Act, § 142.**

A holographic will, in which the testator's name, while appearing in his own handwriting in the attestation clause, does not appear as his signature immediately below the last line in the will proper, should be admitted to probate, pursuant to the provisions of section 142 of the Surrogate's Court Act, which permits a presumption of due execution where the proponent is unable to produce the subscribing witnesses by reason of the death of one and the physical and mental incapacity of the other, since, inasmuch as the only signature of the testator which appears below the physical end of the will is the signature in the early part of the attestation clause, *it is a reasonable inference, in the* absence of evidence to the contrary, that that is the subscription to which the subscribing witnesses referred and attested.

Subdivision 1 of section 21 of the Decedent Estate Law providing that a will to be validly subscribed must be signed at the end thereof by the testator, does not prevent the probate of such a will, where, with the exception of the signatures and addresses of the witnesses, it is entirely in the handwriting of the

testator, and it appears that the will was intended by the testator to be his last will and testament; that it reads straightforward from beginning to end; that every dispositive provision thereof appears above the signature of the testator; and that no question of the genuineness of any other handwriting appearing upon the instrument has been raised; and that no intimation of fraud is made.

PROCEEDING to probate will.

*Virgil B. Van Wagonen,* for the proponent.

*A. D. & A. W. Lent* and *John E. Mack,* for the contestants.

KAUFMAN, S.:

Surrogates' Courts are only too frequently confronted by cases indicating a tendency on the part of many persons about to make testamentary dispositions of their possessions to rely upon their own slight and faulty knowledge of such matters rather than to avail themselves of the knowledge and experience of well-qualified legal practitioners. It seems remarkable that so many people, who carefully plan, industriously work and thriftily save for years to accumulate competences for their families, will, when their aims are realized financially, jeopardize the entire undertakings and invite disaster to their loved ones by personally drafting and superintending the execution of the instruments by which their plans must, if at all, be effected. The immediate result is, of course, the saving of a very few dollars to the testator, but with few exceptions the ultimate result to his survivors is extended and expensive litigation ending either in partial or complete failure of the attempted disposition or its being at length saved by the courts by somewhat forced construction. The present case is typical.

The instrument here propounded purports to be the last will and testament of George W. Eyett. The entire document which is written on one double sheet of foolscap paper, and in the ordinary consecutive order, is, with the exception of the names and places of residence of the two subscribing witnesses, in the handwriting of the testator. It sets forth in fairly intelligible form a bequest and devise of all of the testator's personal and real estate to his wife, Carrie W. Eyett, the appointment of his said wife as executrix and a revocation of all former wills by him made. Immediately following these provisions is the concluding clause of the will proper. which reads as follows: " In witness whereof I have hereunto subscribed my name and fixed my seal the twenty second day of September Nineteen Hundred and Seventeen." The last word of this clause, that is to say, " Seventeen, " stands alone on the left end of one of the blue lines with which the paper is ruled, and to the right of it is a blank space more than five and a half inches long and half an inch wide. On the next blue line below this an attestation clause, written entirely in the handwriting of the testator,

Misc. 523]    Surrogate's Court, Ulster County, March, 1925.

commences and reads as follows: " The foregoing instrument was at the date thereof subscribed by George W. Eyett the testator therein named in the presence of us and each of us he at the time of making such subscription acknowledged that he executed the same and declared the said instrument so subscribed by him to be his last Will and Testament Whereupon we at his request and in his presence and in the presence of each other do hereby subscribe our names as Witnesses thereto." Under this clause appears the signature of " S. A. Ferris " and his address " Highland, N. Y." and immediately thereunder the signature " James E. Westcott " and his address " Highland, N. Y." It will be noted that the name " George W. Eyett " does appear in the handwriting of the testator in the body of the attestation clause, although no such signature appears in the space to the right of the word " Seventeen " immediately above the line on which the attestation clause commences.

The decedent's estate consisted of real property worth about $5,000 and personal property valued at about $2,500. He left no direct descendants surviving him. Upon the instrument in question being offered for probate, various nieces, nephews, grandnieces and grandnephews appeared and filed objections to the probate thereof, whereby the matters now in controversy were raised.

From the evidence adduced by the proponent it appears that James E. Westcott, one of the subscribing witnesses, died prior to the death of the testator, and that the other subscribing witness was so physically and mentally incapacitated by paresis as to preclude his being examined and to render any attempt to obtain his testimony futile. The proponent, therefore, proved the discovery of the instrument among the testator's valuable papers after his death, the fact that the entire instrument including the name " George W. Eyett " in the attestation clause and excepting only the signatures and addresses of the two witnesses, was in the handwriting of the testator, and that the names and addresses of the two witnesses written at the foot of the attestation clause were the true and genuine handwriting of such witnesses and rested. The contestants offered no evidence. There is no question that all of the evidence offered by the proponent is true, and the facts thus proven are practically conceded by all of the parties. The serious question is whether accepting all of the evidence offered by the proponent as true the propounded instrument is entitled to probate.

The contestants assert that the propounded instrument is not shown to have been validly subscribed at the end thereof by the testator as required by subdivision 1 of section 21 of the Decedent Estate Law. While they do not dispute the fact that the name

" George W. Eyett " which appears in the attestation clause is in the testator's own handwriting, they contend that there is not sufficient proof before the court that this signature was made by him in the presence of the witnesses with the intent that such signature should serve as the subscription by him of his last will and testament. In support of this contention they cite a number of cases in which the courts have indubitably held that for the signature of a testator in an attestation clause to constitute a sufficient subscription of a will there must be evidence that the testator in writing such signature there intended that it should be his subscription to the will. Foremost among the decisions thus cited is *Matter of Rudolph* (180 App. Div. 486).

The proponent, on the other hand, contends that the proof offered, in conjunction with the attestation clause and the fact that the will is holographic, is sufficient to entitle the instrument to probate as a will under section 142 of the Surrogate's Court Act, which provides: " If all the subscribing witnesses to a written will be dead, or incompetent by reason of lunacy or otherwise, to testify, or unable to testify   *   *   *   the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

An exhaustive examination of the authorities fails to reveal any decision of any court in this State in an exactly parallel case. The general principles of law applicable thereto are, nevertheless, well settled, and I am convinced that these established rules as well as all of the requirements of right and justice entitle the propounded instrument to probate.

The cases cited by the contestants are not applicable to the present situation. Without exception they are decisions in cases where one or both of the subscribing witnesses were living and were produced in court and testified to facts negativing an inference of due execution of a will; in other words, cases to which the provisions of section 142 of the Surrogate's Court Act, or its predecessor, section 2612 of the former Code of Civil Procedure, had no application. For instance, in *Matter of Rudolph (supra)* both of the subscribing witnesses were living and testified that the propounded instrument was not subscribed or acknowledged in their presence and that they did not see the name of the testator in the attestation clause. In each of the other cases cited by the contestants without exception it appears that one or both of the subscribing witnesses were living and testified to facts negativing an inference of due execution.

In seeking to apply these decisions to the present situation the contestants apparently make no distinction as to the proof required

for the establishment of a will between cases where the subscribing witnesses are living and cases where the subscribing witnesses are dead or otherwise precluded from testifying.   Where the subscribing witnesses are living a much stricter rule prevails.   Where the subscribing witnesses are dead the rule is relaxed under section 142 of the Surrogate's Court Act.   (*Matter of Foley*, 55 Misc. 162; *Matter of Corcoran*, 145 App. Div. 129; *Matter of Abel*, 136 id. 788.)

In short, the law lays down no inflexible rule in such cases, but accepts the best evidence that can be procured, adapted to the nature of human affairs, human infirmities and casualties, which tends with reasonable certainty to establish the fact in controversy. (*Matter of Hesdra*, 119 N. Y. 615, 617; *Brown* v. *Clark*, 77 id. 369; *Matter of Pepoon*, 91 id. 255; *Matter of Cottrell*, 95 id. 329; *Everitt* v. *Everitt*, 41 Barb. 385; *Rider* v. *Legg*, 51 id. 260.)   No unvarying rule can be laid down to control every case; the circumstances of cases must differ and hence it becomes the duty of the court to ascertain from all of the facts and circumstances of the particular case whether the instrument offered is established with reasonable certainty, and if it is, to receive the same.

The present case falls within the latter category.   No eye witness of the testator's signature has been produced nor has any testimony been given as to what actually occurred at the time of the execution of the instrument in fulfillment of statutory requirements.   Under such circumstances the presence of an attestation clause is of great weight.   While it is not evidence, it is a signed recital from which the court may infer that the statutory requirements were complied with.   (*Matter of Briggs*, 47 App. Div. 47; *Matter of Hesdra*, 119 N. Y. 615; *Matter of Sizer*, 129 App. Div. 7, and cases therein cited; *Everitt* v. *Everitt*, 41 Barb. 385; *Brown* v. *Clark*, 77 N. Y. 369.) This rule is very old.   (*Losee* v. *Losee*, 2 Hill, 612.)   In the *Hesdra* case, above cited, Chief Judge RUGER said: " Proof of the signature of a deceased subscribing witness is presumptive evidence of the truth of everything appearing upon the face of the instrument relating to its execution, as it is presumed the witness would not have subscribed his name in attestation of that which did not take place."

The attestation clause in the present case states that the propounded instrument was on the date thereof subscribed by George W. Eyett, the testator therein named, in the presence of the witnesses and each of them; that the testator declared the instrument so subscribed by him to be his last will and testament and requested the witnesses to subscribe the instrument as witnesses thereto and that they did so subscribe as witnesses in the presence of each other and in the presence of the testator.   Inasmuch as the only signature of the testator which appears below the physical end

of the will is the signature at the top of the attestation clause it is a reasonable inference that that is the subscription to which the subscribing witnesses refer and attest. Under the rule above referred to the presumption of due execution arises. This presumption has not been rebutted by any evidence whatever.

Another circumstance which enters into the present case with forceful effect is that the propounded instrument is holographic. In such cases substantial compliance has repeatedly been held to have been sufficient. (*Matter of Beckett*, 103 N. Y. 167; *Matter of Akers*, 74 App. Div. 461; affd., on opinion below, 173 N. Y. 620; *Matter of Levengston*, 158 App. Div. 69; *Matter of Turell*, 166 N. Y. 330; *Matter of Moore*, 109 App. Div. 762; affd., 187 N. Y. 573; *Matter of Field*, 204 id. 448.)

In the enactment of subdivision 1 of section 21 of the Decedent Estate Law the Legislature undoubtedly had in mind the protection of testators and their beneficiaries from the danger of imposition and fraud from unauthorized additions and changes in their wills. That danger does not exist when, as in this case, the will is holographic. Every word of the testamentary dispositions of the present instrument is in the testator's own handwriting and the danger of fraud is, therefore, minimized.

It has been the policy of the courts to relax the requirements of the statute in connection with holographic wills. That policy ought to be pursued in cases like the present where a rigid construction of the statute would defeat the intention of the testator and cause great hardship and injustice to his widow, whom he intended at all events to protect. In fact the rules of stricter construction applied in the earlier cases, of which *Matter of Andrews* (162 N. Y. 1) is typical, seem to have been somewhat relaxed by later decisions, particularly by the unanimous opinion of the Court of Appeals in *Matter of Field* (204 N. Y. 448), where (at p. 457) that court characterizes the decision in the *Andrews* case as extreme and says: " Form should not be raised above substance in order to destroy a will and the substantial thing in this case is a paper which reads straightforward and without interruption from the beginning to the end and when thus read the signature is found at the end."

In the present case there is no doubt whatever that the propounded instrument is, with the exception of the signature of the witnesses, entirely in the handwriting of the testator and that it was intended by him to be his last will and testament. It reads straightforward from beginning to end. Every dispositive provision thereof appears above the testator's signature. The disposition of the testator's property therein made is not only natural, but praiseworthy. Not the slightest intimation of fraud is made.

The circumstances of the execution of the instrument clearly appear from the attestation clause. It was witnessed by two subscribing witnesses of good character and standing in the community in which they resided. No question of the genuineness of any of the handwriting appearing upon the instrument is raised.

The proponent is unfortunate enough by reason of the death of one witness and the present mental disability of the other not to be able to produce either witness. This untoward circumstance, however, for which she is in no manner to blame, coupled with technical objections as to the form and manner of execution of this instrument, ought not to deprive her of the benefits which the testator intended her to enjoy. While I realize it is the intention of the Legislature and not that of the testator which governs in this case, I am confident that the admission of the propounded instrument to probate conforms not only to the intent of the testator but to the intent of the Legislature as well.

The propounded instrument is, therefore, admitted to probate as the last will and testament of George W. Eyett, deceased, and a decree is directed to be entered accordingly.

In view of the unusual circumstances of this matter no costs will be allowed against any of the parties.