Where the subscribing witnesses to a will are dead, or their whereabouts are unknown, and there are no persons living known to be present at the execution of the will, and no written recitals in the instrument of the facts which occurred at the time, the declarations of testator as to the manner in which it is executed are admissible.

Proceeding for the probate of the will of John Oliver, deceased. Granted.

David May, for proponent.

James E. Kelly, special guardian, opposed.

FITZGERALD, S.    The paper propounded was executed in 1885. The decedent was a steamboat man, doing business between Albany and New York.    His wife, at the date of the instrument and afterwards, was a person of unsound mind, and she continued in the same condition more or less until her death.    He left a son, who was also of unsound mind, and an inmate of an institution for the insane.    The estate, by the paper, was left in trust to his daughter, Mrs. Fyle, to be expended by her as she might deem wise for the maintenance of his wife; and upon her death, should there be any residue, it is to go to Mrs. Fyle, with the understanding that, should the son require any assistance, she should devote what would seem to her proper for that purpose.    Mrs. Fyle is named as executrix. The paper was attested by John Featherly, Jr., and S. V. R. Ableman as witnesses.    Ableman died soon after the death of the decedent, and the witness Featherly disappeared, and has not been heard of for six or seven years.    The legal presumption under the circumstances is that he also is dead.    There is no person living who is known to have been present at the execution, and there is no written recital in the instrument of the facts which occurred at the time.    Only the handwritings in the signatures of the testator and the subscribing witnesses are proved.    Objections were filed to the probate of the paper in behalf of the widow, alleging that it was not properly executed.    She has since died.    The special guardian of the insane son has continued the contest.

Under the laws of this state, before admitting a testamentary paper to probate, two, at least, of the subscribing witnesses, must be produced and examined if so many are within the state.    Code, § 2618.    The surrogate must be satisfied of the validity of its execution.    Id. § 2622.    To constitute a valid execution, the testator must sign the instrument at the end, or acknowledge his signature to each of not less than two witnesses, and must at the time declare to them that it is his will, and the witnesses shall sign it at the end by the testator's request.    2 Rev. St. p. 63, § 40.    It frequently happens that, in a literal sense, these requirements are not complied with.    In a liberal spirit the courts hold that a substantial compliance is sufficient.    In re Voorhis' Will, 125 N. Y. 765, 26 N. E. 935.    That testamentary purpose may not miscarry, the law, in the spirit of equity and justice, provides that, if all of the subscribing witnesses are dead, a will may, nevertheless, be established upon proof of the handwriting of the testator and of the subscribing witnesses, and "such other circumstances as would be sufficient to prove the will upon the trial of an action."    Code, § 2620.    This provision is a substantial reproduction of the language of section 20, c. 460, Laws 1837, which has been a subject of adjudication in our courts when it was sought to introduce wills in evidence in trials at law.

In Jackson v. Le Grange, 19 Johns. 386, one of the witnesses to the will was dead, and the second failed to recall the circumstances attending the execution. Because the third witness, who was shown to be living and within the jurisdiction of the court, was not called, that "he might prove or disprove the facts," the will was not received in evidence. But the court was of the opinion that if the recollection of the third witness had also failed, if he could prove his own signature and that of the testator, the execution of the will was sufficiently proved to entitle it to be read. In a summarized statement of the law, Chief Justice Spencer, who delivered the opinion of the court, said: "If the subscribing witnesses to a will are dead, then proof of their signatures and that of the testator is sufficient." Jackson v. Vickory, 1 Wend. 406, is a similar case. The court held, when one subscribing witness was unable to prove that all the requirements of the statute had been complied with, the other witnesses to the transaction, if living and within the jurisdiction of the court, ought to have been called; but, if they were dead, then their handwriting and that of the testator should also be proved, and the jury, from such evidence, would be authorized in inferring that the requirements of the statute had been complied with. In Jauncey v. Thorne, 2 Barb. Ch., at page 59, the chancellor states that the most liberal presumptions in favor of the due execution of wills are sanctioned by courts of justice where, from lapse of time or otherwise, it may be impossible to give positive evidence on the subject; and, where any of the subscribing witnesses are dead, proof of their signatures is received as secondary evidence of the facts to which they have attested in subscribing the will as witnesses of its execution. So, in Cheeney v. Arnold, 18 Barb. 438, it is held, if the witnesses were all dead, proof of their handwriting would be sufficient to establish the due execution of the instrument by the testator. And, again, in Everitt v. Everitt, 41 Barb. 385: "If the witnesses are men of good character, and there is no doubt as to their signatures or any other suspicious circumstance, the attestation clause would be deemed sufficient evidence of a request. In short, the law lays down no stubborn, inflexible rule in such cases, but accepts the best evidence that can be procured, subject to the nature of human affairs and human infirmities and casualties, to establish the fact in controversy." "Nor are the provisions of the statute," as stated in Lawrence v. Norton, 45 Barb. 448, "such as to preclude the admission of the will when some of the witnesses are dead and others do not remember the occurrence." In Butler v. Benson, 1 Barb. 526, it was held that the law, after the diligent production of all the evidence then existing, if there were no circumstances of suspicion, presumed the instrument properly executed, particularly when the attestation clause was full. To the same effect are Rugg v. Rugg, 83 N. Y. 549, and In re Pepoon, 91 N. Y. 255; and in most of the cases in which validity of the execution of a will was in question, when there was no witness living to prove the facts, the existence of an attestation clause, reciting the necessary facts that occurred at the time of the execution, has been an important factor

in determining the decision of the courts.     But to give the attestation clause force as evidence is a generous interpretation of the statute, in the language of which there is nothing to make it such. It is "proof of handwriting" that is prescribed.     It is only under the decisions that an attestation certificate signed by the witnesses is admitted in aid of probate, for it is well settled that an attestation clause is no part of a will, and is not required as part of its execution, but, when the witnesses are dead, it may be presumptive evidence of due execution (Jackson v. Jackson, 39 N. Y. 153); and, when the witnesses are living, it may enable them to recall the facts, if they do not recollect them without.     Under the statute, all that is required in addition to proof of the handwriting of the testator and the subscribing witnesses is "such other circumstances as would be sufficient to prove the will upon the trial of an action."

What were the circumstances under which the will of John Oliver was prepared and executed?     An insane wife and an insane son were not competent for self-care to look after an estate.     Mr. Fyle, the son-in-law of Mr. Oliver, and who at his request drafted the paper, states that, in giving him the instructions, Mr. Oliver referred to his wife's mental condition, stating that it was his wish to give his estate out and out to Mrs. Fyle, and that it was at his (Fyle's) suggestion that the paper took the form in which it was executed, and by which provision for his wife and son was made directory. To some one must be intrusted their care, and who was better fitted than the daughter and sister of the unfortunates?     Mr. Fyle is a journalist and a literary man, not a lawyer, though he states he knew the manner in which wills should be executed.     The scheme of the instrument is clearly expressed.     If Mr. Fyle's testimony is to be credited, after the paper was typewritten, it was delivered to Mr. Oliver, as he was about to leave for Albany, with instructions as to the manner of its execution.     From the fact that both subscribing witnesses were residents of that city, it is a reasonable conclusion that the paper was signed there.     Mr. Oliver, on his return to this city, Mr. Fyle states, came to him, and stated that the paper had been executed there, and told him the manner in which it was done.     Though Mr. Fyle's statement did not in the first instance mention that the decedent told him that he had requested the witnesses to sign the paper, before he left the stand he recalled and testified to the fact;  and it is hardly conceivable, under the circumstances, that they would have signed their names except upon his request.

I am aware that the competency of proof of the declarations of a testator has been called in question in the past.     In the leading case of Waterman v. Whitney, 11 N. Y. 161, the subject was learnedly considered by Judge Selden in respect to the declarations of a testator after the execution of a will, to the effect that he had disposed of his property in a manner entirely different from the disposition shown in the will;  and it was held that no such declarations were competent as evidence of the facts, except they were part of the res gestae at the time of the execution, but were competent as evidence of the testator's mental condition.     The ques-

tion was again considered in Re Marsh, 45 Hun, 107, in a proceeding to establish a lost will. On the trial, the declarations of the testatrix, made from time to time and to within a short time of her death, that she had made a will, and had given her property to the person who was named therein, were admitted. Judge Bradley, who delivered the opinion of the court on the appeal, draws a distinction between declarations of a testator, the purpose of which is to work the revocation of a will, and those which tend to sustain it. In my view, his reasoning is correct. But the declarations of Mr. Oliver were taken without objection. Under the decision in Re Marsh, supra, they would have been competent, even if objected to.

But on the main point—that of execution—I have found no case in this state all the facts of which are like the one before me. In re O'Hare, 2 N. Y. Law Bul. 83, decided by Surrogate Calvin, was one in which the two subscribing witnesses had died, but whose handwritings were proved. It was shown also that one of the witnesses was an attorney, and that the instrument was found among the decedent's private papers after his decease. The question at issue was whether, upon these facts alone, there was sufficient proof of the handwriting of the testator as would be proper to prove the will on a trial at law under the statute. The surrogate held that the language of the statute seemed to qualify the requirements and assimilate the proof to that necessary on a trial at law, and he was of the opinion, if it should be impossible to prove the handwriting of the testator, that fact would not present an insuperable obstacle to clear proof of the instrument and its admission to probate as a will of personal property. In Rider v. Legg, 51 Barb. 260, it was held that the proof of the signatures of two of the three subscribing witnesses to a will, and who were deceased, was sufficient, after a lapse of time, to justify the reception of the will as evidence, without proof of the signatures of the other subscribing witnesses and of the testator.

But the case the facts of which are nearest like those of the one before me is found in the English reports,—In re Thomas' Goods, 1 Swab. & T. 255. In that case there was no attestation clause. Two witnesses were dead, and the third testified that he remembered being requested by the testatrix to attest her signature to the will, and that she did sign her name in his presence, and that he thereupon subscribed his name in her presence. After an interval of so many years, he was unable to recollect all the circumstances attending his subscription; but, as he remembered, the testatrix and he were the only persons present at the time, and that the signatures of John and Mary Skeggs, which appeared subscribed to the will immediately under his signature, were not subscribed in his presence. He did remember that he made a suggestion to the deceased, at the time he subscribed the will, that another witness ought to be present, but what further passed on the subject he was unable to recollect. It appeared from the case that both John and Mary Skeggs were dead, and that they had been people of some consequence. Their handwritings were proved. Sir C. Cresswell, in deciding the case, said:

"I think I may fairly assume that the will was duly executed. The first subscribing witness, who survives, states in the affidavit that he explained to the testatrix that two subscribing witnesses were required to be present at the execution of a will, and it appeared that some time afterwards the testatrix obtained the signatures of two other witnesses. It is a fair presumption that she acted upon the information given her, and got the last two witnesses, in order that she might acknowledge her signature in their presence."

Probate was granted.

The liberality of the courts in their desire to sustain testamentary instruments, when there are no circumstances of suspicion attaching to the execution, is illustrated by another English case,—In re Ashmore's Goods, 3 Curt. Ecc. 756,—in which the will was attested by the marks of the two subscribing witnesses, both of whom were dead, and there was no person living who was present at the execution to testify to the making of the marks, and yet the will was admitted to probate. Applying the principles stated to the case under consideration, I have no doubt of what my determination should be. I have before me proof of the handwritings of the testator and of the deceased witnesses; a will reasonable in its provisions, when the circumstances of the family are considered, the scheme of which was suggested in part, but as a whole was approved by the testator; his declarations as to the manner in which it was executed, showing that he knew the requisites of execution, and that all the acts were in conformity with the statute; and the whole transaction, from beginning to end, in apparent good faith, with nothing to raise a suspicion to the contrary; and the paper was preserved for 10 years with no suggestion of dissatisfaction with its provisions. These facts, under the decisions, would be ample proof to admit the will in evidence on the trial of an action, when its admission might go far to determine, if it would not be conclusive of, the rights of the parties to the controversy; and under section 2620 of the Code, already cited, the facts are equally effective to prove its execution in a special proceeding on the probate of a will in this court.

I hold that the will was duly executed, and I will sign a decree admitting it to probate.