---

In re ABEL'S WILL.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

1. WILLS (§ 302*)—PROBATE—SUFFICIENCY OF "PROOF."

Code Civ. Proc. § 2620, providing that, if all the subscribing witnesses to a written will are dead, the will may be established upon proof of the handwriting of testator and all the subscribing witnesses and also of such other circumstances as would be sufficient to prove the will upon the trial of an action, uses the word "proof" in the ordinary legal meaning, and hence does not require direct evidence as to the fact itself, but allows the establishment of the fact by inference or legal presumptions from other established facts.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 700–710; Dec. Dig. § 302.*

For other definitions, see Words and Phrases, vol. 6, pp. 5684–5686.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. WILLS (§ 289\*)—EXECUTION—EFFECT OF ATTESTATION CLAUSE.**

The existence of an attestation clause in a will is one of the circumstances attending its execution from which arises a very strong inference of fact that due execution was had; proof of the presence of such clause, while not, strictly speaking, giving rise to a presumption of law, being in itself presumptive evidence of such facts as may be induced or inferred from it naturally.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig, § 289.\*]

**3. WILLS (§ 293\*)—EXECUTION—PROOF.**

Even if a will has no attestation clause, facts may be shown constituting presumptive evidence of the execution of the will.

. [Ed. Note.—For other cases, see Wills, Dec. Dig. § 293.\*]

**4. WILLS (§ 302\*)—EXECUTION—SUFFICIENCY OF PROOF.**

An aged couple had been married about 50 years and were childless. The wife had an estate of about $8,000, and the husband one of over $50,000. They set about making mutual wills in favor of each other, depending upon survivorship. Both wills were executed at their residence on the same day and were attested by three subscribing witnesses identical on each instrument and neighbors of testators. The husand's will was executed according to statutory requirements, but the proof was silent as to the wife's will, which contained no formal attestation clause, save that the signatures of the subscribing witnesses appeared immediately under the word "witnesses." Proof was given as to the handwriting of the wife on her will and the signatures of the subscribing witnesses thereto. *Held*, that a prima facie case of due execution of the wife's will was made out under Code Civ. Proc. § 2620, providing that, if all the subscribing witnesses to a written will are dead, the will may be established upon proof of the handwriting of testator and the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 700–710; Dec. Dig. § 302.\*]

Appeal from Surrogate's Court, Kings County.

Proceedings for settlement of the estate of Mary E. Abel. From a decree admitting a will to probate (63 Misc. Rep. 169, 118 N. Y. Supp. 429), contestant, Patrick H. Cannon, appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, THOMAS, BURR, and CARR, JJ.

Francis X. Carmody, for appellant.

Charles H. McCarty, for respondent.

CARR, J. This is an appeal from a decree of the Surrogate's Court of Kings County admitting to probate an instrument proposed as the last will and testament of one Mary E. Abel, deceased. The paper is dated May 1, 1894, and was presented for probate in 1909, and bears the purported signature of the testator and likewise the purported signatures of three subscribing witnesses. There is no formal attestation clause, save to the extent that the signatures of the subscribing witnesses appear immediately under the word "witnesses."

The principal, and, in fact, the only considerable, ground of attack on the surrogate's decree, is made on the claim that the evidence presented to prove the will did not make out even a prima facie case of due execution under the statute. When the will was presented for

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

probate, all three of the subscribing witnesses were dead. Section 2620, Code Civ. Proc., provides:

"If all the subscribing witnesses to a written will are, or if a subscribing witness, whose testimony is required, is dead, or incompetent, by reason of lunacy or otherwise, to testify or unable to testify; or if such a subscribing witness is absent from the state, or if such subscribing witness has forgotten the occurrence, or testifies against the execution of the will; the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances, as would be sufficient to prove the will upon the trial of an action."

Sufficient proof was given before the surrogate as to the genuineness of the signatures of the testatrix and of all three subscribing witnesses.

Proof was further given that the proposed will was a part of a scheme between husband and wife for mutual wills in favor of each other, depending upon survivorship; that the testatrix had testamentary capacity and was free from restraint; that the alleged will offered for probate was drawn by the husband; that the husband had prepared another paper similar in terms to be executed by himself to carry out the scheme of mutual wills; that the husband's will was executed at his home on May 1, 1894, in the presence of three subscribing witnesses who were the same persons who subscribed as witnesses on the paper offered for probate; that the husband in executing his will signed it in the presence of said witnesses, declared it to be his will, requested the witnesses to sign, and saw them then and there sign; and that the paper purporting to be the will of his wife was executed at the same time.

There is no direct evidence as to what was said or done by the wife, other than the fact of her signature and those of the three subscribing witnesses. The appellant contends earnestly that these proofs do not make out a prima facie case establishing due execution of the instrument now in question. His claim is based upon the language of the Code section, ut supra, which requires, in addition to the proofs as to handwriting, proof "also of such other circumstances, as would be sufficient to prove the will upon the trial of an action."

The statute in question uses the word "proof" in the ordinary legal meaning. On the trial of an action the existence of a fact may be established either by direct evidence as to the fact itself or by proof of other facts, from which the existence of the fact in issue may be naturally inferred by the jury. One method is nearly as common as the other, depending entirely on the conditions which surround the production of evidence. Many issuable facts are sometimes impossible of direct proof and can be established only by inference from other established facts. Even where direct proof is not impossible, the issuable facts may be established by inference or legal presumption based upon other proven facts. The question is not one of propriety of evidence, but rather one of weight of evidence. This is so elementary as scarcely to need the stating; but the statement is justifiable here because of the question now presented. The learned surrogate held that the facts proved before him would have justified the submission to a jury, on the trial of an action, the question whether the testatrix had

executed the paper in question in the manner required by the statute; that is, whether she signed it, or acknowledged her signature in the presence of the subscribing witnesses, whether she informed them that the paper was her will, whether she requested them to sign as subscribing witnesses, and whether they did so in her presence.

This is not merely a case where a will is sought to be established on handwriting proofs alone. While there is no direct evidence as to all the circumstances surrounding the execution of the instrument, there is evidence as to many of the circumstances, and the only question is whether the circumstances shown here are of such a nature as to permit a natural inference as to the circumstances not shown directly.

Much has been written on this subject both in this country and in England, and the principles governing its decision are well established. Mr. Theobald, in his very valuable treatise on Wills, at page 73, states the English rule as follows:

"If no evidence is attainable from the attesting witnesses, the will will be presumed to have been duly executed, even in the absence of an attestation clause."

And he cites numerous English authorities which sustain his declaration of the rule. Likewise in 2 Taylor on Evidence (10th Ed.) § 1056, it is stated that:

"The presumption omnia præsumuntur rite esse acta may also be recognized even in cases where no attestation clause is attached to the will, and where circumstances exist, which a nonlegal mind might well deem sufficiently suspicious to justify a very different inference."

Mr. Wigmore, in his work on Evidence, declares that:

"Such seems always to have been the rule in England; and it obtains, with scarcely an exception, in all the American jurisdictions in which the question has arisen." 2 Wigmore on Evidence, § 1512.

In support of this statement, no New York cases are cited; but there have been several cases decided in this state which will be considered briefly further on.

In Redfield's work on Surrogates' Courts (5th Ed.) it is stated, at page 171, that, "in the absence of an attestation clause, there is never a presumption of due execution, publication," etc., of a will, and the decision of the Surrogate's Court in Dodworth v. Crow, 1 Dem. Sur. 256, is given as authority. An examination of this case shows that the case in question is not an authority for the statement of the textwriter. The paper there offered for probate was a codicil. It purported to change a legacy given by a farmer's will to the testator's son, and it was signed by the testator. About an inch below the signature of the testator it contained a clause as follows:

"In acknowledgment of my approval of and consent to the conditions of the above codicil, I hereunto subscribe my name."

Then followed the signature of Thomas J. Dodworth, who was the son whose legacy was changed by the codicil. Underneath this signature was the signature of Bernard M. Chave, preceded by the word "witness." Chave was dead when the paper was presented for probate. The surrogate thought that it was not clear whether the sig-

natures of Thomas J. Dodworth and Chave were as subscribing witnesses to the codicil, or related only to the writing in which T. J. Dodworth consented to the reduction of his former legacy by the codicil, and therefore refused probate.

There have been many cases in this state where the question of establishing due execution of a will by inference or presumption from other facts has been discussed and decided. These cases are of two classes: (a) Where there was an attestation clause; (b) where there was no attestation clause. Of the cases where there was an attestation clause, the decision of this court in the Matter of Sizer, 129 App. Div. 7, 113 N. Y. Supp. 210, is the most recent. The opinion contains a full citation of authorities which will dispense with any repetition here. In that case there were three subscribing witnesses to a will, with the usual attestation clause, and it was held that a prima facie case for probate was made out, notwithstanding that two of the witnesses testified that they could not remember the execution of the will, or even the fact of their signatures, and the third testified against due execution. This court there spoke of an attestation clause as "evidence" of due execution. Other decisions on the same subject have spoken of an attestation clause as not being "evidence" of due execution. Matter of Briggs, 47 App. Div. 47, 62 N. Y. Supp. 294.

All the authorities, however, agree that the existence of an attestation clause is one of the circumstances attending the execution of the will from which arises a very strong inference of fact that due execution was had; the underlying reason being that all persons are presumed to know the contents of what they sign and are likewise presumed to sign in good faith. Thus, when a signed attestation clause is found on a will, and recites due execution, that fact is deemed a basis for a strong inference that there was an execution of the will according to the recitals.

Such proof does not, strictly speaking, give rise to a presumption of law, but is, in itself, presumptive evidence of such facts as may be deduced or inferred from it naturally. Therefore the effect of the existence of an attestation clause is simply to create very strong presumptive evidence of other facts. Even without an attestation clause, facts may be shown constituting such presumptive evidence; and, though the probative force of such facts may or may not be as strong as that of an attestation clause, the difference is in degree or weight, and not in kind.

There are several cases in this state where this rule has been recognized and applied in probate cases where there was either no attestation clause or where the clause was incomplete. In the Matter of Briggs, supra, a will was offered for probate. The subscribing witnesses were dead. Proof was given as to the handwriting of the testator and of the subscribing witnesses. There was an attestation clause, but it contained no recital of a publication of the will. The will was executed under the supervision of the testator himself, and it was shown that some time subsequent to the date of its execution the testator took the paper to a notary public for inspection, told him of the method of its execution, saying that he told the subscribing witnesses that it was his

will when he requested them to sign. The court held that the proof of this circumstance "must necessarily afford as strong an inference as to the due execution of the will as one derived from an attestation clause."

In the Matter of Oliver, 13 Misc. Rep. 466, 34 N. Y. Supp. 706, we have a case where there was no attestation clause at all. The subscribing witnesses were dead, and proof was given as to the handwriting of the testator and of the subscribing witnesses. The will was executed under the supervision of the testator himself. It was shown that the testator had been given instructions by a friend, who was a literary man, as to the manner in which the will should be executed to comply with the statute, and that some time after the execution of the will the testator met his friend and told him that the will had been executed, and so described the manner of its execution as to meet the statutory requirements. It was held that proof of these circumstances furnished a sufficient basis for an inference of due execution. The opinion of the learned surrogate in that case is remarkably lucid, and his conclusions fortified by strong citation of authorities.

We find in some early cases in this state expressions of opinion by the courts that where all of the subscribing witnesses are dead, and proof is given of the handwriting of the testator and of the subscribing witnesses, the will may be admitted in the absence of contradictory evidence. Jackson v. Le Grange, 19 Johns. 386, 10 Am. Dec. 237; Dan v. Brown, 4 Cow. 483, 15 Am. Dec. 395; Jackson v. Vickory, 1 Wend. 406, 19 Am. Dec. 522; Jauncey v. Thorne, 2 Barb. Ch. 40, 45 Am. Dec. 424; Butler v. Benson, 1 Barb. 526.

It is true that these expressions of opinion were made arguendo, and were not applicable to the precise question before the court for decision, and are simply obiter dicta, with no authority save that of illustration or argument.

On this appeal, the learned counsel for the appellant contends that, where there is no formal attestation clause, there is upon the proponent of an alleged will the burden of proof to establish due execution by "direct and unequivocal proof" of due execution. No authority is cited for this proposition, probably because none can be found. Section 2620 of the Code, ut supra, does not demand "direct" proof, but only such proof which on a trial of an action would be admissible to prove a fact, and obviously such proof might be direct as to the given fact or inferential from other facts.

Nor, on the other hand, does the proper disposition of this case involve the question whether in this case, from the simple proof of the handwriting of the testator and the deceased subscribing witnesses, a prima facie presumption of due execution arises. There is much more in the case before us. We have here a case of an aged couple who have been married about a half century and are childless. The wife had an estate of about $8,000, and the husband one of over $50,000. They set about making mutual wills in favor of each other, depending upon survivorship. On May 1, 1894, both wills are executed at their residence and are attested by three subscribing witnesses, identical on each instrument. These witnesses are neighbors of the

testators. The husband's will is shown to have been executed according to the statutory requirements. The proof is silent as to the wife's will. Both, however, were executed at the same time, as a part of one occurrence. Proof is given as to the handwriting of the deceased wife on her will and the signatures of the subscribing witnesses thereto. The question arises: Are the facts thus shown sufficient to authorize an inference of fact that both wills, executed at the same time and under the same direction, were executed in the same manner? If so, then a prima facie case was made out.

This is so, whether the facts proved give rise to an "artificial presumption," commonly known as a "presumption of law," or to a "natural presumption," commonly known as a "presumption of facts." As Mr. Starkie, in his classic work on Evidence, says (page 751):

"Mere natural presumptions are derived wholly by means of the common experience of mankind, from the course of nature and the ordinary habits of society. Such presumptions are, therefore, wholly independent of the system of laws to be applied to the facts when established; they remain the same in their nature and operation, whether the law of England, or the Code of Justinian, is to decide upon the legal effect and quality of the facts when found."

The same author remarks:

"It would be a vain endeavor to attempt to specify the numerous presumptions with which the knowledge of a jury conversant in the common affairs and course of dealing in society necessarily supplies them. It is obvious that such presumptions are coextensive with the common experience and observation of mankind"—quoted from Thayer's Preliminary Treatise on Evidence, pp. 549, 550.

To my mind, at least, it appears clear that on the facts proved before the surrogate a prima facie case was made, which on the trial of an action would have required the submission of the question of due execution of this instrument to the jury.

As to the determination by the surrogate of the facts of execution and his decree admitting this will to probate, this court should not now interfere. The inference of fact drawn by the surrogate was the natural one under the circumstances, and such as most men would draw under similar conditions.

The decree of the Surrogate's Court should be affirmed, with costs. All concur.