**F. H. SEYDLER et al., Appellants,**

v.

**Erna Strobel BAUMGARTEN et al., Appellees.**

No. 13000.

Court of Civil Appeals of Texas.

Galveston.

Sept. 20, 1956.

Rehearing Denied Oct. 11, 1956.

Harry D. Larson, Eagle Lake, for appellants.

Hodges, Moore & Gates and Otto Moore, Jr., Columbus, Earl A. Brown, Chas. B. Wallace, and R. T. Wilkinson, Jr., Dallas, for appellees.

GANNON, Justice.

This is a plenary or independent suit originally brought in the county court of Colorado County under the provisions of Articles 5534, 3433 and 3434, V.A.T.S., Probate Code, arts. 93, 11, 33, to set aside the probate of an instrument dated May 26, 1938, previously established by judgment of that court as the last will of George Seydler, deceased. Plaintiffs joined with their suit to set aside the probate of the instrument of May 26, 1938, an application to probate a later instrument dated June 8, 1938. On appeal to the district court, at a trial before the court without a jury, all relief prayed for by plaintiffs and applicants was denied, and they appeal to this Court.

The plaintiffs are F. H. Seydler, Maurice Seydler and Richard Seydler. The defendants are Erna Strobel Baumgarten, a widow, who is sued individually and in her capacity as guardian of Myrna Loy Baumgarten, the minor Myrna Loy Baumgarten being alleged to be the sole heir of Victor Baumgarten, deceased, and others, including Magnolia Petroleum Company, who, it is alleged, assert an interest in property belonging to the estate of the decedent.

The case was tried in the District Court on an agreed statement "constituting all the facts involved." From this statement,

which incorporates the testimony of the witnesses in narrative form, the following appears:

1. The cause was properly and regularly before the District Court on appeal from the judgment of the County Court.

2. On January 5, 1955, Erna Strobel Baumgarten made application to the County Court of Colorado County to probate as a muniment of title an instrument dated May 26, 1938, as the last will and testament of George Seydler, deceased.

3. The instrument dated May 26, 1938, is a will of George Seydler, deceased. It recites that at the time of its execution George Seydler was a single man. By this will there is bequeathed to a sister and brother of decedent $1 each, all the rest and residue of the estate, after payment of debts and funeral expenses, being devised and bequeathed to Erna Strobel Baumgarten, a niece, and to Victor Baumgarten, her husband, a nephew by marriage.

4. After due notice and citation, the application to probate was heard and granted and the instrument of May 26, 1938, was admitted to probate as a muniment of title by order dated January 17, 1955.

One of the attesting witnesses, W. R. Keuper, appeared at the hearing in the County Court and proved the execution of the instrument dated May 26, 1938. The agreed statement makes reference to Keuper's testimony in the County Court and it appears in the transcript as a part of the papers in the District Court. This testimony is in the usual short form of "Proof of Will" and contains the following relating to nonrevocation as the testimony of this witness given at the hearing on January 17, 1955: "Said George Seydler died without having revoked said last will and testament."

5. On March 25, 1955, plaintiffs filed this independent suit in the County Court of Colorado County to set aside the probate

of the instrument of May 26, 1938, and joined therewith an application to probate as the last will and testament of the decedent, but as a muniment of title only, an instrument dated June 8, 1938. The sole ground of plaintiffs' independent suit to set aside the probate of the instrument of May 26, 1938, was that this instrument was not the last will and testament of the decedent because it was revoked by a later valid will, to wit: the instrument of June 8, 1938.

The instrument of June 8, 1938, in full, is as follows:

"The State of Texas }
"County of Wharton }

"Know all men by these presents, that I, George Seydler, of the County of Wharton, and State of Texas, being in good health, and of sound and disposing mind and memory, do make and publish this, my last will and testament, *hereby revoking all wills by me at any time hereto-fore made.* (Emphasis supplied.)

"First: I direct that my just debts shall be paid, and that the legacies hereinafter given shall, after the payment of my debts, be paid out of my estate.

"Second: I give all my real and personal property to my nephews as follows: F. H. Seydler—one-third, ($\frac{1}{3}$), Maurice Seydler—one-third ($\frac{1}{3}$) and Richard Seydler—one-third ($\frac{1}{3}$).

"Third: I hereby constiture and appoint John I Marik sole executor of this my will without bond.

"In witness whereof I have hereunto set my hand this the 8th day of June, A.D., 1938, in the presence of L. G. Lavendusky and Roy H. McConnaghy who attest the same at my request.

(Signed) George Seydler

"The above instrument was now here subscribed by George Seydler, the testator,

in our presence, and we, at his request, and in his presence, sign our names, hereto as attesting witnesses:

(Signed) L. G. Lavendusky
(Signed) Roy H. McConnaghy"

6. The plaintiffs' witnesses, L. G. Lavendusky, Roy H. McConnaghy and John D. Marik, testified by deposition taken in the counties of their respective domiciles. Their testimony appears in the agreed statement in narrative form, as follows:

### L. G. Lavendusky

"* * * That he now resided at Temple in Bell County, Texas, and had resided there since November, 1939. That on June 8, 1938, he resided at East Bernard in Fort Bend County, Texas, where he had lived until he moved to Temple. He was over fourteen years of age in 1938. That he knew George Seydler in June, 1938, and would judge Seydler to be in his seventies at that time. That Seydler appeared to be of sound mind at that time. That after inspecting the original of the instrument dated June 8, 1938, and purporting to bear the signatures of George Seydler, L. G. Lavendusky and Roy H. McConnaghy, he could and did identify the signature of L. G. Lavendusky as being his own signature. That he did not recall ever having seen the instrument before and that he could not remember signing the same. He could not identify the signatures of any other person on the instrument."

### Roy H. McConnaghy

"* * * That he now resided at East Bernard in Fort Bend County, Texas, and had lived there since 1911. That on June 8, 1938, he was 46 years of age. That he had formerly known a George Seydler who used to run a store in East Bernard, but that he did not know whether said George Seydler was living or dead on June 8, 1938. That the last time he saw George Seydler was when Seydler came down from Schulenburg and he and Seydler had some drinks at Old Dutch's and Seydler passed out. That after inspecting the original of the instrument dated June 8, 1938, and purporting to bear the signatures of George Seydler, L. G. Lavendusky and Roy H. McConnaghy, he could and did identify the signature of Roy H. McConnaghy as being his own signature. That he did not recall ever having seen the instrument before and that he could not remember signing the same. He could not identify the signatures of any other person on the instrument."

### John I. Marik

"That he now resided at East Bernard in Fort Bend County, Texas, and had lived there, or near there, for all of his life, 55 years. That he was now Justice of the Peace, City Tax Collector, and engaged in the insurance business, and had formerly been School Tax Collector also. That for about twenty years prior to 1935 he worked as a bookkeeper for J. G. Leveridge Company at East Bernard, in the lumber, feed and grocery business. That he knew George Seydler first in about 1925 to 1928. That George Seydler was approximately 70 to 72 years of age in 1938. That while working for the Leveridge Company he had occasion to see Seydler write his name and was familiar with his signature. That after inspecting the original of the instrument dated June 8, 1938, and purporting to bear the signatures of George Seydler, L. G. Lavendusky and Roy H. McConnaghy, he could and did identify all three signatures as being their own signatures. That he did not see either George Seydler, L. G. Lavendusky or Roy H. McConnaghy sign the instrument dated June 8, 1938 and shown to him."

Testimony of the witnesses, Agnes Myree Seydler, Isabelle Cardenes and F. H. Seydler was included in the agreed statement in narrative form as the same was given in the County Court, as follows:

### Agnes Myree Seydler

"That she was the wife of F. H. Seydler, one of the plaintiffs, and resided with her husband at 826 Eastland, Houston, Texas, where they had lived for approximately 24 to 25 years. That she knew George Seydler for about 30 years. That he visited in her home on several occasions and that she had seen him write his name and could identify his signature. After being shown the instrument dated June 8, 1938, she could identify the signature 'George Seydler', subscribed to such instrument, as the signature of George Seydler, now deceased, who was the uncle of her husband, F. H. Seydler."

### Isabelle Cardenes

"That she was formerly Isabelle Seydler and that George Seydler was her uncle. That she was now 50 years of age and knew George Seydler in June of 1938, and that he was over 21 years of age at that time. That he visited in her hom in 1938 and he was of sound mind at that time. That she had seen him write his name on different occasions and could identify his signature. After being shown the instrument dated June 8, 1938, she could and did identify the signature 'George Seydler,' subscribed to such instrument, as the signature of George Seydler, now deceased, who was the uncle of Isabelle Cardenes."

### G. H. Seydler

"That he was familiar with the signature of George Seydler, his uncle, and after being shown the instrument dated June 8, 1938, he identified the signature of 'George Seydler,' subscribed thereto as the signature of the said George Seydler, his uncle. That the first time he saw such instrument dated June 8, 1938, was sometime in June of 1938 when he received the instrument through the mail. That he had kept such instrument in a box in his home, in his possession, since that time. That George Seydler died in 1951, a resident of Colorado County, Texas. That he was over 21 years of age on June 8, 1938, and was of sound mind at that time. That so far as he knows, such instrument had not been revoked."

The foregoing is the substance of the agreed statement upon which the case was tried in the District Court, from which it appears negatively that defendants offered no testimony to contradict that offered by the plaintiffs and that they rely for support of the judgment of the trial court entirely upon the proceedings resulting in the probate of the instrument of May 26, 1938, and upon the insufficiency, as a matter of law, of plaintiffs' proof to establish the instrument of June 8, 1938, as a valid will legally executed.

The manner of submission of the case to the trial court on an agreed statement, incorporating the testimony of witnesses, seems to us to be somewhat unusual; however, all parties treat the submission as if the witnesses, each and all, had testified in the District Court either in person or by deposition and we decide the case on that assumption.

Plaintiffs contend the case should be reversed and rendered in their favor because the proof establishes as a matter of law that the instrument of June 8, 1938, was executed with all the formalities and solemnities required by law to make it a valid will and that it therefore was entitled to probate as the last will of the decedent, revoking any and all wills theretofore executed by decedent, including the instrument of May 26, 1938. Specifically they rely for reversal upon the following points:

"Point #1. This cause should be reversed because, the uncontradicted evidence shows the instrument dated June 8, 1938, to be the last will of George Seydler, and that it was executed with all the formalities and solemnities and under the circumstances to make it a valid will.

"Point #2. The hand writing of the testator and the Attesting witnesses having been proven by two or more competent

witnesses, the attesting clause of the will, raised *the legal presumption* that the attesting witnesses signed the will in the presence of the testator, and will stand *until rebutted by competent evidence.* (Emphasis supplied.)

"Point #3. The will of George Seydler dated June 8, 1938 contained the usual clause, revoking all wills heretofore made, when it was proven to be a valid will, it revoked and annuled the will dated May 26th, 1938 by its own terms. The admitting of the instrument dated May 26th, 1938 to probate could not *breath* life into it, or require the proponents of the will dated June 8th, to produce more evidence to prove its due execution than the Statutes or law requires."

The appellees say the judgment of the District Court should be affirmed because the evidence was insufficient as a matter of law to establish revocation of the will of May 26, 1938, i. e., to establish the revoking instrument of June 8, 1938, as a validly executed will; and alternatively, that considered in its most favorable light from the standpoint of plaintiffs the evidence only raised issues of fact in this respect, which issues of fact have been properly determined against plaintiffs.

As presented in the brief, we gained the impression that the defendants relied upon the insufficiency of the proof to establish, as a matter of law, either (a) the genuineness of the testator's signature to the instrument of June 8, 1938, or (b) that such instrument was subscribed by the witnesses in the presence of the testator, as required by law. However, at the oral argument counsel for defendants stated they claimed no fraud and made no point of the genuineness of the signature of the decedent to the instrument of June 8, 1938. So their case as presented to us is limited to the contentions (a) that the evidence was legally insufficient and incompetent to show the witnessing of the instrument of June 8, 1938, as required by law for non-holographic wills, and (b) that at most the evidence only raised an issue of fact in this respect which the trial court was free to decide and did decide against the plaintiffs.

■ Independently of the concession made by counsel for defendants, we think it clear that the evidence compelled a finding of the genuineness of the signature of the testator to the instrument of June 8, 1938, as a matter of law. That the instrument bore the genuine signature of George Seydler was established by the uncontradicted testimony not only of the interested witnesses, F. H. Seydler and his wife, Agnes Myree Seydler, but as well by the uncontradicted testimony of the witness, John I. Marik, and that of Isabelle Cardenes.

■ In the brief defendants claim that Marik and Cardenes were interested witnesses because Marik was named executor in the instrument of June 8, 1938, and because Isabelle Cardenes, being a niece of George Seydler, was related to the plaintiffs, who were his nephews. The witness Isabelle Cardenes, for aught the record shows, bears the same relationship to the defendant, Erna Baumgarten, as she does to the plaintiffs, and there is nothing in the record to show that this witness had or was calculated to have any bias or prejudice in favor of, or against, any of the parties-plaintiff or defendant. As to the witness Marik—while it is true he was named as executor—it is also true that the record shows that office to be functus officio, since it was established that as of the time of the application for probate there was no necessity for administration on the estate and the proceeding was one involving solely a claimed muniment of title. Therefore, we see no possible interest in the controversy on the part of the witness Marik. In this state of the record, with at least two disinterested witnesses testifying to the genuineness of testator's signature and the defendants being content to stand mute on the point without offering

any evidence when clearly it was in their power to do so, we think there would have been no justification for the trial court refusing to accept the undisputed testimony in respect to the genuineness of the testator's signature to the instrument of June 8, 1938, coming as it did under circumstances wholly free of suspicion. The Supreme Court in Cochran v. Wool Growers Central Storage Co., 1942, 140 Tex. 184, 166 S.W.2d 904, 908, declared as an exception to the general rule permitting rejection of the uncontradicted testimony of an interested witness that such testimony is to be taken as true as a matter of law where "not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon."

■ Since there is no claim of either undue influence or want of testamentary capacity, and since the signatures of the testator and of competent subscribing witnesses are established as genuine without dispute, the narrow basic question before us is: Where, as here, the memory of the living subscribing witnesses, each and both, of all circumstances surrounding their witnessing of the will has completely faded—being dead, as it were—is a full attestation clause such as appears on the instrument of June 8, 1938, admissible and competent as secondary hearsay evidence to establish that the subscribing witnesses, each and both, attested the will, as required by Article 8283, V.A.T.S., Probate Code, art. 59, i. e., by subscribing their names *in the presence of the testator?*

We regard the affirmative of the question as settled by the overwhelming weight of authority elsewhere, and consider that the Texas cases of Massey v. Allen, Tex.Com. App., 1923, 248 S.W. 1067, and Wilson v. Paulus, Tex.Com.App., 1929, 15 S.W.2d 571, 573, holdings approved, clearly indicate that the general rule obtains in Texas.

In Wilson v. Paulus, the Commission of Appeals approved the text of 40 Cyc. 1304, as follows:

" 'A full attestation clause reciting compliance with all formalities of execution and signed by the witness is prima facie evidence of the validity of the will, although the witness' memory is faulty, or he contradicts the facts stated in the clause, or where he is dead. The statements of the attestation clause may, however, be rebutted by proper evidence.' "

However the case was reversed because the attestation clause was not itself properly proved up in that the evidence established the genuineness of the signature of only one of the subscribing witnesses.

Massey v. Allen, supra, holds that the statutory provisions for proving up a written will produced in court are not exclusive and that when such provisions are not applicable, other common law methods are admissible. Though the opinion of the Commission in Massey v. Allen is not expressly approved by the Court itself, we consider the holding amply supported by Supreme Court authority cited in the opinion.

In Massey v. Allen, supra [248 S.W. 1069], one of the subscribing witnesses was deceased and the memory of the other in respect to the transaction in which he signed his name as a subscribing witness was dead. There was no direct proof that the will was witnessed by either of the subscribing witnesses in the presence of the testator, as required by statute, and apparently the instrument there in controversy carried no attestation clause above the signatures of the subscribing witnesses. There was only the fact of the witnesses having subscribed as such. There was no proof, either direct or circumstantial, to negative the proper execution of the will, as required by statute. But the signatures of the subscribing witnesses, each and both, were properly proved up. The Court of

Civil Appeals held the will entitled to probate and the Supreme Court affirmed. The Commission of Appeals stated:

"From these authorities and from those cited hereafter on the proposition that the witness Williams' memory being dead, his attestation should be given the same standing as though he himself were physically dead, we are constrained to hold that the probate of the will in controversy herein ought not to be defeated for the reason that there is no direct testimony that the witnesses signed the instrument in the presence of the testator, and that, as the facts and the circumstances surrounding the transaction, no fraud being shown, satisfy us that the will was duly executed with all the formalities and solemnities required by law, and that there being no evidence that the will was not signed in the presence of the testator, Williams' attestation being fully proven, the statute not being applicable, *the legal presumption* from all the facts is that the will was signed with all such formalities and solemnities."

Having held the provisions of Article 3267, Vernon's 1914 Texas Statutes, now Section 84 of the Probate Code, inapplicable, the Court turned to the common law, being by statute the rule of decision in Texas, and said:

"There being no statute applicable to the facts in this case, and no decision of our Supreme Court or Courts of Civil Appeals to guide us in passing upon this question, we therefore refer to the common law for our rule of evidence as provided under the last-named statute. The doctrine laid down in the case of Greenough v. Greenough, 11 Pa. 489, 51 Am.Dec. 567, meets our approval as stating the rule and the reason for the rule:

" 'But what avails it that the man is living, if his memory is dead? If it were blotted out by paralysis, or worn out by decay, his attestation would stand for proof by a witness; but it must be immaterial how or by what means it lost its tenacity.

The law of double proof would place wills on ticklish ground did it leave them to depend on the incorruptibility of attesting witnesses or on their exemption from growing infirmity. Even where they flinch from their attestation, it satisfies the demands of the statute in the first instance, and is evidence to confront them before a jury. After the testator has executed his will in conformity to the requirements of the law, it would be a mockery of his right of testamentary disposal to exclude presumptive or secondary evidence of a compliance with forms that would be received in cases of another nature.'

"The authorities outside of this state are apparently unanimous in holding that, if the witnesses to the will are produced in court and are forgetful of all the facts, the law in such cases will supply the defect of proof by presuming that the requirements of the statute were duly observed, unless the contrary is proved, and we cite a few of them as follows: Greenleaf on Ev. (16th Ed.) § 38a., p. 135; 1 Jones on Ev. § 50; 2 Wigmore on Ev. §§ 1511, 1512; 1 Alexander on Wills, § 511, p. 694; Beach on the Law of Wills, par. 39; 40 Cyc. par. J., p. 1273; Deupree v. Deupree, 45 Ga. 415; Barnes v. Barnes, 66 Me. 286; Eliot v. Eliot, 10 Allen, Mass., 357; Fatheree v. Lawrence, 33 Miss. 585, 622; Chaffee v. Baptist Missionary Convention, 10 Paige, N.Y., 85, 40 Am.Dec. 225; Clarke v. Dunnavant, 10 Leigh, Va., 13–22; Ela v. Edwards, 16 Gray, Mass., 91; Orser v. Orser, 24 N.Y. 51; O'Hagan's Will, 73 Wis. 78, 40 N.W. 649, 9 Am.St.Rep. 763."

The language of Massey v. Allen, supra, is sufficiently strong to support the proposition that the mere presence of signatures of subscribing witnesses, even without an attestation clause, raises a presumption of law as distinguished from a presumption of fact of the due execution of the will.

In addition to the authorities cited in Massey v. Allen, see the annotation in 76 A.L.R. 617 reaching the conclusion from numerous cases that all courts which have

considered the question "rule that a complete attestation clause reciting an observance of all statutory requirements raises a presumption of the due execution of a will if there is no contest as to the genuineness of the signatures of the witnesses, or that of the testator, or after these signatures are proved to be genuine.

\*　　\*　　\*　　\*　　\*　　\*

"And such presumption exists, although there is a failure of memory by the witnesses as to the facts relative to the execution."

The following quotation from Underwood v. Thurman, 1900, 111 Ga. 325, 36 S.E. 788, 790, set out in the annotation, supra, is explanatory of the sweep of the rule:

"An attestation clause, appearing upon a testamentary paper, and containing a recital of all the facts essential to its due execution as a will, as was the case here, raises a presumption that such paper was executed with all the requisite legal formalities pertaining to wills, if it be shown, as was done in the present instance, that the alleged testator and the witnesses actually affixed their signatures to the instrument; nor does it matter that as to two of the witnesses there was such a failure of memory, as that above indicated. 'If a will purports to have been duly signed, attested, and witnessed, on proof of execution the court will presume, in the case of the death of the witnesses, or in case they do not remember the facts connected with its execution, that the law was complied with.' 1 Jones, Ev. § 44, p. 89. On this subject Greenleaf says: 'If the subscribing witnesses to a will are dead, or if, being present, they are forgetful of all the facts, or of any material fact to its due execution, the law will in such cases supply the defect of proof by presuming that the requisites of the statute were duly observed.' 1 Greenl.Ev. (16th Ed.) § 38a. From 1 Redf.Wills, (4th Ed.) * 238, we extract the following: 'It seems to be well settled that, in the absence of all proof, the witnesses being deceased or not in a condition to give testimony, the presumption omnia rite acta will arise, as in ordinary cases. So, also, where the attestation is general, not enumerating the particulars, it will be presumed the will was duly executed, unless the contrary appear. And, where the attestation clause contains all the particulars of a good execution, it will always be prima facie evidence of due execution, and will often prevail over the testimony of the witnesses who give evidence tending to show that some of the requisites were omitted.' The distinguished author also says that 'the mere forgetfulness of the witnesses of the facts certified in the attestation clause is not regarded as an obstruction to granting probate of the will,' and, after referring to a case where probate was allowed even where the witnesses deposed that the legal requirements were not complied with, adds that it has been held that the presumption of due execution 'will only be made where the will, upon its face, appears to have been duly executed, or, being lost, proper evidence is adduced of such having been the fact.' "

We hold there was competent evidence to support the due execution of the instrument of June 8, 1938, as a will, and now consider whether the evidence in its entirety compelled a finding of due execution or only raised an issue of fact in respect to the subscribing witnesses having signed as such in the presence of the testator, which is the only fact issue appellees claim the evidence raises.

To support their contention appellees rely heavily upon the probate of the earlier instrument of May 26, 1938, and on the evidence of the subscribing witness, W. R. Keuper, to such earlier instrument, as follows: "Said George Seydler died without having revoked his last will and testament." Additionally, appellees rely upon the failure of the proponents of the instrument of June 8, 1938, to offer any evidence other than the attestation clause with respect to the circumstances attending the preparation and execution of the instrument of June 8, 1938; their failure to offer any explana-

tion of why the testator would revoke the will of May 26, 1938, within thirteen days after its execution; and the failure of proponents of the instrument of June 8, 1938, to offer any evidence in respect to the relationship between them and the testator other than the bare fact of their kinship as nephews of the testator. The appellees also point to the failure of appellants to explain from whom the will was received other than that it came to appellant Seydler in the mails, and as well to appellants' failure to produce the draftsman of the instrument or to present any evidence in respect to the circumstances under which the will was drafted. In our opinion, had appellants made proof along these omitted lines, such proof would not have shed any light on the narrow question —which is the only one before us—of whether the will was properly witnessed by the subscribing witnesses *in the presence of the testator*. Then, too, it would appear that the omitted proof, so far as the record shows, was equally available to appellees as to appellants, except possibly proof in respect to the party from whom the will was received by the appellant Seydler. However this latter detail strikes us as wholly irrelevant to the proper execution of the will in view of the concession of the genuineness of all the signatures appearing on the instrument of June 8, 1938. In short we are unable to see how any of the above could have had any probative force in respect to the due execution of the will, which is the sole grounds of defense to appellants' suit, unless it be either the fact of the probate of the earlier instrument carrying with it, as such probate does, a finding of nonrevocation, or the testimony of the witness Keuper to the effect that the earlier instrument had not been revoked.

We first consider the probative effect of the judgment establishing the earlier will.

 Appellees cite several cases stating that the fact of probate of a will en-

titles it to "every presumption * * * in favor of * * * [its] validity," including Bell v. Bell, Tex.Civ.App., 248 S.W.2d 978, 982, and Cook v. Denike, Tex. Civ.App., 216 S.W. 437. However, rightly understood, we believe that the "presumption" referred to in these cases is actually no more than an administrative assumption. And that in a proceeding of this kind to set aside the probate of a will on the ground of revocation it is not contemplated that the earlier probate be given any weight *as evidence* but only that the court proceed on the administrative assumption, *in the absence of* proof, that the earlier probate establishes the validity and nonrevocation of the probated instrument. It is true that in a proceeding such as this, under Article 5534, the burden is on the plaintiff affirmatively to show the revocation of the earlier probated will. Richardson v. Ames, Tex.Civ.App., 2 S.W.2d 517. But that burden is only by a "preponderance of the evidence" and we do not consider the cases as holding, or even intimating, that in a suit under Art. 5534 the probate of an earlier instrument constitutes "evidence" of its nonrevocation. Such probate, we believe, goes no further than to raise an administrative assumption as explained in Empire Gas & Fuel Co. v. Muegge, Tex.Com.App., 1940, 135 Tex. 520, 143 S.W.2d 763, and other cases, which vanishes or *is put to flight* when positive evidence to the contrary is introduced. For an extended discussion of this question, see Kilgore v. Gannon, 1916, 185 Ind. 682, 114 N.E. 446, L.R.A.1917E, 530, and the annotation in L.R.A.1917E, page 533, reviewing cases considering probate of wills as evidence. In the interest of brevity, we quote a syllabus from Kilgore v. Gannon: "In an action to contest a will, the fact that the will had been admitted to probate was not prima facie evidence that testator was a person of sound mind when he executed the instrument, and that it was duly and properly executed, evidence having been offered to the contrary, since the ordinary function of most so-called pre-

sumptions of law, as they relate to the law of evidence, is to cast on the party against whom the presumption works the duty of going forward with evidence; and, when that duty is performed, the presumption is functus officio." (Emphasis supplied.) There are many so-called presumptions, such as of sanity, innocence in civil cases, that a public officer does his duty, etc., but as declared by the text writers these are in reality only administrative assumptions of a prima facie character which yield, vanish and are put to flight—in short, become functus officio—upon the coming in of positive evidence. Presumptions of this class are not evidence in the sense of proof.

Lastly we come to the question which arises from the presence in the record of testimony of W. R. Keuper, a subscribing witness to the probated instrument, given at the hearing of January 17, 1955, on the application to probate that instrument, that "said George Seydler died without having revoked said last will and testament." In a proceeding to set aside the probate of a will such as the present, is this competent evidence of the nonrevocation of the instrument of May 26, 1938? Does it add any weight to the presumption of continuity arising from proof of the due execution of the instrument of May 26, 1938? McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025; May v. Brown, 144 Tex. 350, 190 S.W.2d 715. If it is, then under this record, it must be evidence either that the testator did not sign the instrument of June 8, 1938, or that the subscribing witnesses did not sign it as witnesses; or if they did that they did not subscribe in the presence of the testator.

We think it perfectly evident that the testimony of the witness Keuper given in the January 17, 1955 hearing, when the probate of the instrument of May 26, 1938 was alone under consideration, was not even intended to go out to or apply to any fact question of due execution of the instrument of June 8, 1938. Perhaps the quot-

ed testimony of this witness was intended as no more than evidence of a negative character such as was discussed in Wilson v. Paulus, Tex.Com.App., 15 S.W.2d 571, 573. Since that decision the view is held in many quarters that it is necessary to introduce positive evidence of witnesses at probate hearings that the propounded instrument has not been revoked. In Wilson v. Paulus, supra, it was held that the testimony of a witness, as follows: " 'Of my own knowledge, I do not know whether or not Mr. Wilson ever revoked this will' " was "some evidence" of nonrevocation. With due respect, we regard the ruling as highly questionable and are convinced it proceeded from the court's then incorrect concept of the necessities of justice. In fairness to the court, it should be pointed out that it is readily deducible the court, as it wrote, was not aware of its own prior holding in McElroy v. Phink, supra, which it afterward followed in May v. Brown, supra, that the mere proof of due execution of a will raises a presumption of continuity and that this presumption satisfies the demand of the statute for proof of nonrevocation.

■ But be the foregoing as it may, we are satisfied that for another reason the testimony of the witness Keuper was not competent evidence, at least in a proceeding such as the present, of nonrevocation of the instrument of May 26, 1938. The testimony is couched in terms of rankest legal conclusion. Actually it is nothing more than an out-and-out conclusion of law, or possibly of mixed law and fact. Under well established rules it was clearly incompetent and inadmissible in a proceeding such as the present. Being incompetent as a mere conclusion, it is not to be given probative effect even though admitted without objection. See Casualty Underwriters v. Rhone, 1939, 134 Tex. 50, 132 S.W.2d 97, 99. We quote:

"The only testimony in the record which would in the least tend to support the conclusion that Rhone was working

for the Beaumont Development Corporation was given by Rhone and McDaniel, each of whom testified that, at the time of the injury, Rhone was working for it. *Those statements did not amount to any evidence at all.* They were but bare conclusions and therefore incompetent, and the fact that they were admitted without objection adds nothing to their probative force. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Webb v. Reynolds, Tex. Com.App., 207 S.W. 914; 17 Tex.Jur. 922, Sec. 416."

See also Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 537, holding that incompetent testimony, though admitted without objection, may not form a basis of a fact finding. In that case the court had under consideration evidence, hearsay in character, in disparagement of a grantor's deed duly executed, offered for the purpose of showing the nonexecution of the deed in question, for the purpose of conveying the land therein described. The court said:

"While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

Since so far as the record shows the witness Keuper was available to testify to the details of his knowledge, if any, of the facts in respect to the due execution vel non of the instrument of June 8, 1938, we are wholly unable to see any justification, in the light of the ruling by the Supreme Court in the case of Henry v. Phillips, and especially in the light of its similar ruling in Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97, involving an incompetent conclusion, for our giving any probative weight to the outright legal conclusion of the witness, especially when he detailed no fact upon which that legal conclusion was based. It would be idle for us to determine whether the completely negative testimony of a witness in respect to facts such as was ruled on in Wilson v. Paulus, supra, would have any greater probative value than his affirmative speculative legal conclusion such as is involved here. Consequently we pretermit a discussion of this question.

■ We are not unaware of such cases as In re Abel's Will, New York, 1910, 136 App.Div. 788, 121 N.Y.S. 452, holding that an attestation clause does not give rise to a presumption of law but is only presumptive evidence of such facts as may be deduced or inferred from it naturally and that therefore the effect of an attestation clause is simply to create very strong presumptive evidence of other facts. But such cases must be weighed in the light of the particular statutes under which they were decided. The New York statute under which In re Abel's Will was ruled expressly provided in certain instances for the establishment of wills "upon proof of the handwriting of the testator, and of the subscribing witnesses, and *also of such other circumstances* as would be sufficient to prove the will upon the trial of an action." Surrogate's Court Act, § 142. (Emphasis supplied.) However, Texas has no such statutory provision, and it is evident from Massey v. Allen, supra, that in Texas proof of the attestation of a will by subscribing witnesses, even in the absence of an attestation clause, gives rise to a true presumption of law as distinguished from an inference or presumption of fact. This is further clarified by the holding of Wilson v. Paulus, supra, that an attestation

clause constitutes presumptive evidence of the proper execution of a will which *"must be overcome by evidence to the contrary."* This again is in effect a holding that an attestation clause gives rise to a true presumption of law as distinguished from a mere permissible inference or presumption of fact. The importance of the distinction is that a presumption or inference of fact, even in the absence of conflicting evidence, does not forestall a fact finding to the contrary; whereas a presumption of law does. See 17 Tex.Jur., p. 245, Evidence—Civil Cases, Sec. 56. The practical importance is that if the attestation clause here involved raises only a presumption of fact, the limit of our authority would be to reverse and remand; whereas if it raises a true presumption of law, we are constrained, in the absence of conflicting competent evidence, to reverse and render.

On the authority of Massey v. Allen and Wilson v. Paulus, supra, we hold that the attestation clause here involved raises a presumption of law in favor of the due execution of the will. We further hold under the facts in this record that the declarations showing due execution of the will contained in the attestation clause are competent, admissible, and direct, though hearsay, evidence of the facts recited, which, in the absence of any competent, admissible evidence to the contrary, demands a finding of the due execution of the will.

There are no findings of fact or conclusions of law in the record. We are, therefore, without information in respect to the ground upon which the learned trial court based his decision; but we are inclined to think that he was probably influenced strongly by Jones v. Steinle, Tex. Civ.App., 15 S.W.2d 164, a case relied upon by appellees in this Court. However, we regard Jones v. Steinle as inapplicable. In that case the proponents of the will failed to lay a proper predicate for the introduction of secondary proof and it was ruled, therefore, that such proof could not be re-

lied on. Having failed to produce or account for the absence of one of the attesting witnesses and also apparently having failed even to prove the genuineness of the signature of such witness, the appellant was held to be in no position to complain of an unfavorable fact finding based upon the affirmative testimony of one of the two subscribing witnesses that the testator did not sign in the presence of such witness. If the opinion in Jones v. Steinle, supra, goes further, then it is thought contrary to Massey v. Allen, and Wilson v. Paulus, supra, and we decline to follow it.

Reversed and rendered.

CODY, J., not sitting.

On Appellees' Motion for Rehearing.

In their application for rehearing, appellees move the Court to strike from the opinion certain statements referring to concessions made by counsel for appellees at the oral argument. The motion is as follows:

"Appellees move the court to strike from its opinion the statements made therein with reference to oral argument made by counsel for appellees. These statements of the court relate to the genuineness of the signature of George Seydler on the instrument dated June 8, 1938 and will be found at the following places in the court's opinion:

"On page 8 of the court's opinion, beginning with the word 'however' in the fourth line following the period.

"On page 8 in the first line of the next to the last paragraph, beginning with the word 'independently.'

"On page 9 in the first four lines of the last paragraph.

"In connection with the foregoing, it is here stated that counsel for appellees had no intention of conceding that the evidence established that the signature on the instrument of June 8, 1938 was the genuine signa-

ture of George Seydler, deceased. What counsel intended to be said, and what counsel believes was actually said, was, in effect, that no witness testified to any fraud, or testified that the signature was not genuine, but the point appellees were trying to make was that the evidence as shown by the record at most only raised an issue of fact as to whether the signature was genuine, and the trial court's finding was conclusive. The brief of appellees will show that such contention was made there. Appellees submit that, under the circumstances of the record in this case, if this court overrules this motion for rehearing then appellees should be permitted to go to the Supreme Court on the written record."

At the Judges' conference immediately following submission of this cause, the members of the Court were hard put to convince themselves, in the light of the contents of appellees' brief—their hearing to the contrary notwithstanding—that the concessions referred to had actually been made; but, after full discussion reached the conclusions in respect thereto which appear in the opinion. In the light of the contents of the motion for rehearing, we are convinced that we misunderstood counsel, or misconstrued what was said, or, if what was said would bear out what is stated in the opinion, that the statement was made unguardedly and unintentionally and ought not to be binding on appellees.

We are happy, in the interest of justice and fair play, to sustain the above motion, and we now withdraw so much of the opinion as we are asked to withdraw thereby.

As we understand the motion, there is no question but that at the oral argument it was conceded by appellees that they claimed no fraud.

We have carefully considered all grounds of appellees' motion for rehearing and, except as herein set out, find no merit therein and same is refused.